MILLS, ADMINISTRATOR, RESPONDENT, *v.* OLSEN ET AL., APPELLANTS.

(No. 2,960.)

(Submitted March 14, 1911. Decided March 28, 1911.)

[115 Pac. 33.]

*Mechanics' Liens—Proof—Presumptions—Application of Credits—Attorneys' Fees—Statutes—Constitution.*

Mechanics' Liens—Proceedings to Perfect—Form and Requisites—Statutes.
  1. Revised Codes, section 7291, requires that a notice of mechanic's lien shall state under oath that it contains a just and true account of the amount due after the allowance of all credits. Plaintiff's notice of lien set forth with considerable detail the contract between himself and the contractor, the amount of work done, including extra work, the amount of materials furnished, stated the balance claimed to be due, and also stated "that these items are

correct," and was signed by plaintiff, and bore a jurat reciting that it was subscribed and sworn to before a notary public. *Held,* a sufficient notice.

Same—Matters to be Proved.
2. Where it is admitted by the defendants in a proceeding for the enforcement of a mechanic's lien that plaintiff will testify that the items set out in the claim are correct, there is a *prima facie* case for the plaintiff for the full amount of his claim.

Appeal and Error—Review—Presumptions—Rulings at Trial.
3. Where the evidence in a proceeding for the enforcement of a mechanic's lien is such that it cannot be ascertained how the court and jury arrived at the amount awarded to the plaintiff, the supreme court in disposing of the case will give plaintiff the benefit of the presumption that all contested questions of fact were decided in his favor.

Same—Amount of Lien—Application of Credits.
4. Where a subcontractor employed on defendants' building has had an account with the contractor for work and material on contracts for other buildings, he has no right to credit the contractor on their old account for material which actually went into the defendants' building, since the defendants are entitled to have these amounts credited to their building.

Same—Enforcement—Fees and Costs—Constitutionality of Statute.
5. Revised Codes, section 7166, allowing an attorney's fee to claimants of mechanics' liens, is unconstitutional.

*Appeal from District Court, Missoula County; J. Miller Smith, a Judge of the First Judicial District in and for Lewis & Clark County, presiding.*

ACTION by F. A. Mills, as administrator of the estate of W. H. Charnley, deceased, against Allen J. Olsen and Fred Johnson, copartners, doing business under the firm name of Olsen & Johnson, and J. T. Lacasse and others. Judgment for plaintiff, and defendants appeal from it and an order denying them a new trial. Modified and affirmed.

*Mr. John M. Evans, Mr. John J. Marquette,* and *Mr. John H. Tolan* submitted a brief in behalf of Appellants. *Mr. Marquette* argued the cause orally.

In behalf of Respondent, *Mr. Harry H. Parsons* and *Mr. Albert Besancon* submitted a brief. *Mr. Besancon* argued the cause orally.

The validity and constitutionality of the statute, section 7166, Revised Codes, providing for the taxation of an attorney fee

as part of the costs on foreclosure of a mechanic's lien, has been upheld by this court in the following decisions: *Wortman* v. *Kleinschmidt,* 12 Mont. 316, 30 Pac. 280; *Helena Co.* v. *Wells,* 16 Mont. 65, 40 Pac. 78; *Murray* v. *Swanson,* 18 Mont. 533, 46 Pac. 441; *Hill* v. *Cassidy,* 24 Mont. 113, 60 Pac. 813. In these cases the provisions of the Montana Constitution invoked by appellants were fully considered and upheld. Decisions of sister states on the question have but little or no weight, but we cite the following as upholding statutes providing for the payment of attorney's fees: *Dell* v. *Marvin,* 41 Fla. 221, 79 Am. St. Rep. 171, 26 South. 188, 45 L. R. A. 201; *Robertson* v. *Moore,* 10 Idaho, 115, 77 Pac. 218; *Davis* v. *Rittenhouse,* 92 Ill. App. 341; *Duckwall* v. *Jones,* 156 Ind. 682, 58 N. E. 1055, 60 N. E. 797; *West* v. *Badger L. Co.,* 56 Kan. 287, 43 Pac. 239; *Lamb Lumber Co.* v. *Benson,* 90 Minn. 403, 97 N. W. 143; *Fitch v. Howitt,* 32 Or. 396, 52 Pac. 192; *Little* v. *Saulsberry,* 40 Wash. 550, 82 Pac. 909; *Greene* v. *Finnell,* 22 Wash. 186, 60 Pac. 144; as not impairing the obligation of contracts (8 Cyc. 1016), and cases cited; as not denying the equal protection of the laws (8 Cyc. 1076, and cases cited). Nearly all of the cases cited by appellants were decided on this same question, *i. e.,* of statutes making an unjust distinction between classes of suitors. In *Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, cited and so much relied on by appellants, we find practically the same condition. The case has no application to a general state statute on the foreclosure of liens that applies equally to all within the state. The case was appealed from the supreme court of Texas, argued *ex parte* in behalf of the railroad company, and a dissenting opinion is written by Mr. Justice Gray, with whom concurred Mr. Chief Justice Fuller and Mr. Justice White. It is not in point on the question raised in the case at bar, and we fail to see how it can have any controlling force in this court. The case was decided on January, 1897, while we find this court upholding the statute of our state as late as April 16, 1900, in *Hill* v. *Cassidy, supra.*

The protection of neither the state nor the federal Constitution or statutes was invoked by appellant in the trial court. Such questions cannot be raised for the first time on appeal. (*Shewalter* v. *Missouri Pac. Ry. Co.*, 152 Mo. 544, 54 S. W. 224; *Clark* v. *Porter*, 162 Mo. 516, 63 S. W. 89; *Hanlon* v. *Pulitzer Pub. Co.*, 167 Mo. 121, 66 S. W. 940; *Hardin* v. *City of Carthage*, 171 Mo. 442, 71 S. W. 673; *J. G. Hutchinson & Co.* v. *Morris Bros.*, 190 Mo. 673, 89 S. W. 870; *Brown* v. *Missouri K. & T. Ry. Co.*, 175 Mo. 185, 74 S. W. 973; *Shaw* v. *Goldman*, 183 Mo. 461, 81 S. W. 1223.)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was begun in Missoula county by W. H. Charnley to foreclose a mechanic's lien. After trial Charnley died, and Mills, as his administrator, was substituted. In discussing the case we shall refer to Charnley as the plaintiff. The complaint alleges that the defendants Lacasse were the owners of certain lots in the city of Missoula; that they made a contract with Olsen & Johnson to erect a building thereon; that the latter contracted with Charnley to do the lathing and plastering, for which they promised to pay him at the rate of thirty-six cents per square yard; that Charnley agreed to furnish all materials used by him; that Olsen & Johnson should advance the money necessary to pay for materials as needed, the remainder of the contract price to be paid for as the work progressed; that, if Olsen & Johnson could purchase materials cheaper than could Charnley, they were to do so, and give him the benefit of such reduction in price; that they were to do all hoisting of materials without expense to Charnley, and were to pay him the reasonable value of all extra work; that plaintiff did 17,087 yards of plastering and performed extra work, all of which amounted to the sum of $6,432.42, no part of which has been paid except the sum of $3,740.13, leaving a balance due of $2,692.29, for which amount plaintiff filed and claims a lien upon the building. We shall

refer to the defendants collectively. For answer they admitted that Olsen & Johnson entered into a contract with Charnley to lath and plaster the building at thirty-six cents per square yard; alleged that Charnley was to furnish all material and labor, including water necessary for mixing plaster; denied that Olsen & Johnson were to pay for hoisting materials, but admitted that plaintiff was to have the use of the elevator for that purpose. They denied the amount of work claimed to have been done by him; alleged that the total amount earned under the contract was $5,439.67, on which they had paid in cash and materials the sum of $5,960.50, being an overpayment of $520.83, for which they demand judgment by way of counterclaim. Plaintiff by reply denied all new matter in the answer. The cause was tried to the district court, sitting with a jury. A general verdict for plaintiff in the sum of $1,348 was rendered, whereupon the court made certain so-called findings of fact which, instead of being of any assistance to this court, are mostly conclusions of law and fact, and entered judgment in favor of the plaintiff for the amount of the verdict, including costs and attorney's fees. From the judgment and an order denying a new trial, defendants have appealed.

1. Appellants' first contention is that plaintiff's notice of lien is fatally defective, in that it fails to state under oath that it contains a just and true account of the amount due him after allowing all credits, as provided by section 7291, Revised Codes. As a matter of fact, the notice of lien sets forth the contract [1] between the parties, the amount of work done, including extra work, and the amount of materials furnished, in considerable detail. It gives the total amount of credits or moneys paid thereon, and states the balance claimed to be due. It also states "that items are correct." It is signed by Charnley, and bears a jurat reciting that it was subscribed and sworn to before Harry H. Parsons, a notary public. We think it is sufficient. (*Black* v. *Appolonio,* 1 Mont. 342; *McGlauflin* v. *Wormser,* 28

Mont. 177, 72 Pac. 428; *Neuman* v. *Grant*, 36 Mont. 77, 92 Pac. 43; 27 Cyc. 197.)

2. The second contention is that the evidence is insufficient to justify the findings, and that the amount found due the plaintiff is excessive.

At the trial, Mr. Tolan, one of the defendants' attorneys, made this statement: "There is no doubt that the plaintiff will testify that the items set out in this mechanic's lien are correct; that is, with reference to the extra work and all about it." This [2] statement was accepted by the court and opposing counsel, and makes out a *prima facie* case on the part of the plaintiff for the full amount claimed by him. It is assumed in the brief of appellants that the amount claimed for lathing and plastering is correct, and it is then said: "By this assumption respondent would have as the total amount earned by him under the contract and for extras and the other items charged in his lien the sum of $6,432.42." This amount, then, was fixed at the trial, and the only question is: What credits should have been allowed to the appellants?  It will be noted that the jury returned a verdict for about one-half the amount claimed by Charnley. It is impossible to ascertain from the record what particular items of credit they allowed or disallowed. Had proper findings been made in that regard, great assistance would have been afforded this court. Appellants offered in evidence sixteen bank checks drawn by them to the order of plaintiff and others, aggregating $3,587.35, all of which are now claimed to be undisputed credits on their account. To this statement, however, the respondent does not agree. Charnley testified that he began work about January 1, 1909, and finished about April 1, of the same year; while Olsen declared that material was delivered at the building for him in the latter part of November or 1st of December. It was agreed that plaintiff had performed work for the defendants Olsen & Johnson in the fall of 1908 on two certain other buildings known as the University Library and the Deschamps building. Charnley testified that Olsen & Johnson

were indebted to him for work and labor on these other buildings, and that he gave them credit on these accounts for all moneys paid and materials furnished by them which were not credited by him upon the Lacasse building contract. This was his general statement, repeated many times during the trial. He claimed the right to so apply the payments. No effort was made to show the amounts actually due him on these other contracts.

We have never examined a less satisfactory record, and feel that a proper disposition of the case would be to remand it for a new trial, which action would be taken were it not for the fact that Charnley is dead, and such a course would perhaps result in placing his representative at a disadvantage. And we are also reluctant to order a new trial in view of the circumstance that the appellants here had it in their power to clear matters up in the court below by requesting a special verdict and specific findings of fact. It is impossible from the record to tell whether Charnley had any credit balance in his favor on either the university library building contract or the Deschamps building. He admitted receiving two carloads of cement from Olsen & Johnson. As to this cement, which he claims was sixty tons at $11 per ton, he first said that he gave credit for it on the university library work and the Deschamps building. Afterward he said that he allowed it on "this Lacasse job contract," and still later he testified that he "did not give them credit for the amount paid for the plaster on his job in the Lacasse building." The court ruled, as we understand it, that Olsen & Johnson were entitled to credit for the whole of it in any event.

Having carefully studied the evidence, we are unable to ascertain how the court and jury arrived at the amount awarded the plaintiff. His counsel offers no figures to justify it. Consequently it is of no significance. We shall therefore dispose of [3] the case in a manner which seems to us substantially correct, giving the respondent the benefit of the presumption that all contested questions of fact were decided in his favor.

Charnley testified that he had credited Olsen & Johnson with the following cash payments:

| | | | |
|---|---|---|---:|
| 1. | Balance overdrawn on previous contracts........$ | 380 | 38 |
| 2. | January 9, 1909,   Cash...................... | 250 | 00 |
| 3. | January 6, 1909,   "   ....................... | 300 | 00 |
| 4. | January 23, 1909,  "   ....................... | 600 | 00 |
| 5. | January 30, 1909,  "   ....................... | 282 | 50 |
| 6. | February 1, 1909,  "   ....................... | 200 | 00 |
| 7. | February 13, 1909, "   ....................... | 200 | 00 |
| 8. | February 20, 1909, "   ....................... | 200 | 00 |
| 9. | February 27, 1909, "   ....................... | 100 | 00 |
| 10. | April 3, 1909,     "   ....................... | 135 | 00 |
| 11. | March 22, 1909,    "   ....................... | 175 | 00 |
| 12. | January 31, 1909, amount paid plasterer........ | 53 | 25 |
| 13. | January 2, 1909, amount paid lathers.......... | 66 | 60 |
| 14. | *  *  *  amount paid for lime............... | 32 | 50 |
| 15. | April 20, 1909, check ....................... | 165 | 00 |

$3,140 23

Olsen testified that Charnley received the following cash payments:

| | | | |
|---|---|---|---:|
| 1. | December 16, 1908, check for freight on plaster..$ | 210 | 00 |
| 2. | February 26, 1909, check..................... | 100 | 00 |
| 3. | April 2, 1909,      "   ..................... | 135 | 00 |
| 4. | January 2, 1909,    "   ..................... | 50 | 00 |
| 5. | January 9, 1909,    "   ..................... | 282 | 50 |
| 6. | January 9, 1909,    "   ..................... | 250 | 00 |
| 7. | January 16, 1909,   "   ..................... | 200 | 00 |
| 8. | February 5, 1909,   "   ..................... | 200 | 00 |
| 9. | January 23, 1909,   "   ..................... | 600 | 00 |
| 10. | January 30, 1909,   "   ..................... | 550 | 00 |
| 11. | February 20, 1909,  "   ..................... | 350 | 00 |
| 12. | February 13, 1909,  "   ..................... | 200 | 00 |
| 13. | March 20, 1909,     "   ..................... | 175 | 00 |
| 14. | April 20, 1909,     "   ..................... | 165 | 00 |
| 15. | April 12, 1909,     "   ..................... | 53 | 25 |
| 16. | April 2, 1909,      "   ..................... | 66 | 60 |

$3,587 35

Omitting for the moment the check for $210 paid for freight on plaster, we find that the amounts and dates substantially correspond in the two statements, with three exceptions, *viz.:* (a) Charnley denies that the check for $50 given on January 2 was a credit on the Lacasse building; (b) he gives no credit for the two checks for $550 and $350 given on January 30 and February 20, respectively; and (c) Olsen does not mention the payment of $300 on January 6. We think the $50 check of January 2 should be charged against the plaintiff because he testified that the plasterers on the university library and Deschamps buildings finished their work on December 24, 1908, on which date he received $50 to pay them off. He then said that the check for $50 received on January 2 was given to him for the same purpose, "just before Christmas," and finally admitted that he did not know what it was for unless it was for the plasterers on the Deschamps building, "because there is where the plasterers were working." In view of the fact that the plasterers on the Deschamps building had finished their work, and that plastering on the Lacasse building had begun, it is manifest that, if he paid plasterers with the check, the plasterers referred to were employed on the Lacasse building. He made no attempt to deny that he received a check for $550 on January 30, and another for $350 on February 20. When he opened his account with Olsen & Johnson for the Lacasse building about the 1st of January, 1909, he gave them credit for $380.28, overpaid on the two other buildings; so that it is clear that the sum of these two checks, *viz.*, $900, should be credited to Olsen & Johnson on the Lacasse contract, as Olsen testified.

A great deal of testimony was taken as to whether the $210 check of December 16, 1908, should be charged against Charnley. He testified, in substance, that he received a car-load of cement from one Dally in Spokane, and that this check was given him by Olsen & Johnson to pay the freight thereon. He further said, however, that he told them he would not consent to be charged for cement any greater sum than he was obliged to pay Dally, to-wit, $11 per ton laid down in Missoula. And he

said he purchased this cement at $10.50 per ton f. o. b. Missoula. He was manifestly in error in this, because if the cement was to be laid down in Missoula, free of freight charges, there would have been no necessity for him to get $210 from Olsen & Johnson to pay such charges. Olsen testified that the price of cement in Missoula varied from $14 to $16 per ton. He said that a rebate of $2 per ton was allowed for the return of the sacks, so that the net price of $16-cement was $14. Again, in his account filed with his notice of lien, Charnley credited the defendants with one and one-half tons of cement at $14 per ton. Again, if the freight on sixty tons of cement amounted to $210, the charges on one ton would be $3.50, which, added to the price named by Dally, of $10.50, makes $14 per ton, in Missoula, which agrees with all the testimony on the subject. This item of $210 should therefore be charged to the plaintiff.

The sum of the additional cash payments which we think should be charged to Charnley, as above stated, *viz.,* $210, $50, $550, and $350, is $1,160, which, added to the amount he admitted having received ($3,140.23), makes $4,300.23. He also received lime to the amount of $48.50, for which he credited them with only $32.50. The balance of $16 should be charged to him. If we accept his last statement on the subject, he used sixty tons of cement on the Lacasse building, and gave them credit on other contracts for $660. He says he credited them with all they furnished; but in this he is mistaken, for the record shows that he used all they delivered to him, which was 1,416 sacks. This cement at $14 per ton would come to $991.20. As he credited but $660, the balance of $331.20 should be now credited.

Let us revert for a moment to his original statement of account. He there gave credit for $3,740.13, of which $3,140.23 was cash, leaving a balance of $599.90, which must have been for material; and this material must necessarily have been lath and common lumber, as he received no other, except as above stated. The total value of the lath furnished him was $775.72, and common lumber $29.28, making a total of $805. He swore that he credited it all on the old contracts, but this statement

cannot be true.   The difference, or $205.10, is all that could have been so credited.   He should, then, be charged with the value of material (lath and common lumber), which he admits in his pleadings and testimony was a proper credit to Olsen & Johnson, to-wit, $599.90.

### Summary.

| | | |
|---|---:|---:|
| Cash to be credited to Olsen & Johnson | $4,300 | 23 |
| Balance on lime account | 16 | 00 |
| Balance on cement account | 331 | 20 |
| Value of material admitted to be a proper credit | 599 | 90 |
| Total | $5,247 | 33 |

The difference between $6,432.42, the total amount due under his contract, and $5,247.33, credits allowed Olsen & Johnson, is $1,185.09, or $162.91 less than the amount of the verdict.   In this sum the verdict against Olsen & Johnson and the judgment against them are excessive.

So far as the lien is concerned, Charnley had no right to [4]   credit Olsen & Johnson on their old account for material which actually went into the Lacasse building.   The owners were entitled to have these amounts credited to the building.   These credits should be:

| | | | | |
|---|---:|---:|---:|---:|
| Lath and common lumber | $805 | 00 | | |
| Lime | 16 | 00 | | |
| Cement | 991 | 20 | | |
| | | | $1,812 | 20 |
| Add to this cash received | | | 4,300 | 23 |
| Total | | | $6,112 | 43 |

Deduct this amount from $6,432.42, and we have $319.99, the amount which is a lien against the building.

It is contended that section 7166, Revised Codes, giving lien claimants an attorney's fee, is unconstitutional.   This court in *Wortman* v. *Kleinschmidt*, 12 Mont. 316, 30 Pac. 280, held a similar statute valid.   Since that case was decided, however, the supreme court of the United States in *Gulf etc. R. Co.* v. *Ellis*,

165 U. S. 150, 17 Sup. Ct. 225, 41 L. Ed. 666, the supreme court
of California in *Builders' Supply Depot* v. *O'Connor,* 150 Cal.
265, 119 Am. St. Rep. 193, 88 Pac. 982, 17 L. R. A., n. s., 909;
*Stimson Mill Co.* v. *Nolan,* 5 Cal. App. 754, 91 Pac. 262; *Mannix*
v. *Tryon,* 152 Cal. 31, 91 Pac. 983; *Merced Lumber Co.* v.
*Bruschi,* 152 Cal. 372, 92 Pac. 844; *Hill* v. *Clark,* 7 Cal. App.
609, 95 Pac. 382; *Farnham* v. *California Safe Deposit Co.,* 8 Cal.
App. 266, 96 Pac. 788; *Los Angeles Pressed Brick Co.,* v. *Higgins,* 8 Cal. App. 514, 97 Pac. 414, 420, and the supreme court of
Colorado in *Davidson* v. *Jennings,* 27 Colo. 187, 83 Am. St. Rep.
49, 60 Pac. 354, 48 L. R. A. 340, have held like enactments to
[5] be void. To the same effect are the decisions in *Grand
Rapids Chair Co.* v. *Remells,* 77 Mich. 104, 43 N. W. 1006;
*Durkee* v. *Janesville,* 28 Wis. 464, 9 Am. Rep. 500; *Railroad Co.*
v. *Morris,* 65 Ala. 193; *Paddock* v. *Missouri Pac. Ry. Co.,* 155
Mo. 524, 56 S. W. 453; *Phenix Ins. Co.* v. *Hart,* 112 Ga. 765, 38
S. E. 67; *Openshaw* v. *Halfin,* 24 Utah, 426, 91 Am. St. Rep.
796, 68 Pac. 138; *Atkinson* v. *Woodmansee,* 68 Kan. 71, 74 Pac.
640, 64 L. R. A. 325; *Hocking Valley Coal Co.* v. *Rosser,* 53 Ohio
St. 12, 53 Am. St. Rep. 622, 41 N. E. 263, 29 L. R. A. 386; *Randolph* v. *Builders etc. Supply Co.,* 106 Ala. 501, 17 South. 721;
*West* v. *Wabash R. Co.,* 118 Mo. App. 432, 94 S. W. 310. We
think the reasoning of these cases is unanswerable. In some of
the states statutes giving special protection to laborers and mechanics have been upheld, while in others similar statutes have
been declared unconstitutional. We have no occasion to pass
upon the constitutionality of such statutes in this opinion, and
do not do so. Suffice it to say that our statute extends the benefit to materialmen, contractors, and others who do not come
within the reason that may justify legislation for the protection
of laborers and mechanics.

The order denying a new trial is affirmed, and the cause is
remanded to the district court of Missoula county with directions to modify its judgment against Olsen & Johnson by deducting therefrom the sum of $162.91. The balance is affirmed.
That part of the judgment relating to the lien upon the building

is ordered modified by reducing the amount of the lien to the sum of $319.99, for which amount alone it is affirmed in this regard. That portion thereof relating to attorneys' fees is ordered stricken out. Each party shall pay his own costs in this court.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.