## CHARLES v. THE E. F. HALLACK LUMBER AND MANUFACTURING COMPANY ET AL.

1. APPELLATE PRACTICE—BILL OF EXCEPTIONS.

When it appears that the bill of exceptions does not contain all of the evidence, the findings of the trial court will be accepted as conclusive of the facts.

2. CONTRACTS, SUBSTANTIAL PERFORMANCE OF.

There may be a substantial performance of a building contract notwithstanding the amount required to remedy defects and omissions may be quite substantial.

3. PARTIES.

The principal contractor is a necessary party to an action by a subcontractor against the property owner to enforce a mechanic's lien.

4. EVIDENCE.

The agreement between the contractor and subcontractor constitutes, as against the owner, *prima facie* evidence of the value of the materials or labor furnished thereunder by the subcontractor.

5. CONTRACTS—NONPERFORMANCE.

Where, under a provision in a building contract authorizing him so to do, the owner has taken up and relaid at the expense of the contractor defective flooring, he is not in a position to resist a recovery under the contract on the ground of nonperformance.

*Error to the District Court of Arapahoe County.*

THE plaintiff in error, John Q. Charles, and the defendants in error, Thompson & Tomlinson, entered into a written contract, dated April 10, 1889, for the erection and completion of a six-story building on the corner of Fifteenth and Curtis streets, in the city of Denver, for the sum of $97,525, payable in installments as the work progressed, less twenty per cent of the work done and material furnished, which was to be deducted and held back until the building was fully completed, such installments to be paid upon the production of the architect's certificate. The provisions of the contract that are applicable and material to the questions involved in controversy are as follows:

"*First:* That said parties of the first part covenant, promise and agree to make, erect, build and finish for the said party of the second part, in a good, substantial and workmanlike manner on lots numbered one to six inclusive, in block number 106, situated on the corner of Fifteenth and Curtis streets in said city of Denver, now owned by the said party of the second part, a six story building, the fronts of said building on Fifteenth and Curtis streets to be of red sandstone of the best quality, taken from Greenlee's quarry near Manitou, Colorado, and to furnish all the labor and material necessary and required for building, completing and finishing the same, agreeable to, and in strict conformity with the drafts, plans, drawings, explanations and specifications of the same, prepared by L. Cutshaw, Esq., architect and superintendent of said building, and severally signed by the said parties hereto, and which said plans, drawings and specifications shall be taken to be and are hereby made a part of this contract.

"That all the work done, and materials furnished in the erection of said building, shall be so done and furnished under the supervision of L. Cutshaw, architect and superintendent as aforesaid, and to his satisfaction, who shall before the final completion and acceptance of such labor and material furnish the said party of the second part with a certificate in writing to the purport and effect that such work done,

and material so furnished, are in strict conformity and compliance with said plans, drawings and specifications, and provisions of this agreement.

\*      \*      \*      \*      \*      \*      \*      \*

" And when said building shall be fully completed and finished in accordance with said plans and specifications, and the covenants and stipulations of this agreement, then in like manner upon the certificate of said architect to that effect, the said party of the second part shall pay, or cause to be paid to the said parties of the first part, the remainder of the contract price agreed upon and hereinbefore stated, for the erection and completion of said building, amounting to the further sum of $33,025.   It being the intention of the parties hereto that said payments above mentioned shall in the aggregate amount to said sum of $97,525.

\*      \*      \*      \*      \*      \*      \*      \*

" *Third:* It is further stipulated, understood and agreed by and between the parties hereto that the architect and superintendent above named shall have the right at his discretion to reject any work or materials which he may deem not to be in accordance with the plans, drawings or specifications or either of them, or the provisions of this contract, or which he may deem unfit or unsuitable for the work required or necessary to be done under this contract.   He shall also have power and authority to remove all work or material which he shall deem to be contrary to the terms and conditions hereof, and to have the same replaced by proper work and materials at the cost and expense of the said parties of the first part, and may deduct the amount thereof from the estimates and payments required to be made thereafter by the said party of the second part.

\*      \*      \*      \*      \*      \*      \*      \*

" *Fifth:* That in case the said parties of the first part shall neglect or refuse to supply the necessary workmen or material to properly carry on the work, with a view to complete on or before the time herein agreed, then in such a case the said party of the second part shall have power and is hereby

given the right, after twenty-four hours' notice in writing shall have been given the parties of the first part of their intention so to do, to furnish the necessary workmen or materials to properly carry on the work, and the expense of all work or materials so procured shall be deducted from the amount herein agreed to be paid to the parties of the first part by the party of the second part.

"*Sixth :* That in order to prevent all disputes or disagreements between the parties hereto, in relation to the execution of the work, the quantity or quality of the materials, it is expressly understood that the parties of the first part shall adhere strictly to the plans, drawings and specifications, and to obtain from the architect all necessary explanations and instructions of the drawings and specifications, and in case of any disagreement between the parties hereto in relation thereto, the decision of the architect above named shall be final and binding on all parties hereto.

*        *        *        *        *        *        *        *

"*Eighth :* It is further covenanted and agreed by and between the parties hereto, that the said parties of the first part shall complete and finish the storerooms in said building situated on Fifteenth and Curtis streets so that the tenants may occupy the same for business on or before the first day of September, A. D., 1889, and that they will fully complete and finish said building in conformity with said plans, drawings and specifications on or before the first day of November, A. D., 1889. And it is distinctly declared and understood by the parties hereto, that the time mentioned above for the completion of said store-rooms, and the final completion of said building, is a very important consideration in this contract, and of the essence thereof, and in case of a failure to complete said stores at the time above named, the damages arising therefrom shall be liquidated and assessed at the sum of twenty-five dollars per day for each and every day said store-rooms remain uncompleted after said first day of September, A. D., 1889, as aforesaid; and in case of a failure to complete and finish said building on said first day of Novem-

ber, A. D., 1889, the damages arising to said party of the second part shall thereafter be liquidated and assessed at the sum of twenty-five dollars per day that said building shall thereafter remain unfinished, which said sums shall be deducted from the amounts herein agreed to be paid to said parties of the first part, or may be collected by action against said parties."

And it is further provided in said contract that Charles might make any alteration he deemed proper by adding to or deducting from the amount of work or materials, or by changing them from one grade or quality to another; and if the parties to the agreement could not agree as to the amount occasioned by any such change, then the architect should appraise the amount and value, and indorse said appraised sum on the contract, and it should thereby become binding on all the parties. Under this provision Charles elected to, and did, deduct from the amount of work to be done by Thompson & Tomlinson the plastering, and relet the same; also the putting down of the basement floors, and relet such work to other parties. The installments as provided in the contract were paid, except the last, upon which $2,500 had been advanced.

This suit was instituted by The E. F. Hallack Lumber and Manufacturing Company against Charles, the owner of the building, Thompson & Tomlinson as the principal contractors, and the other parties as subcontractors. The pleadings are voluminous, but the principal issue, being the amount due the principal contractors, is presented by their cross complaint and the answer of Charles thereto, and his counterclaim against them, he (Charles) claiming a deduction on account of damages arising from a failure on their part to complete the contract in the time and manner specified. The trial court made full and specific findings of the facts established by the evidence, among them the following:

"That the said defendants Thompson & Tomlinson substantially performed the contracts entered into by them with the defendant Charles, except as to the floors which were

completed, but in a defective condition of floors, damages in the amount of $2000 should be allowed defendant Charles. That the building in its entirety was not completed at time and date originally required and stipulated by the terms of the contract, but that such requirements as to time and date of completion was waived by conduct on the part of the defendant Charles; and demurrage claimed on account of failure to complete in point of time was also waived by conduct on the part of the defendant Charles and is disallowed."

It found that there was due Thompson & Tomlinson, after deducting the amount paid them by Charles and the amount paid to other parties for plastering and the basement floors, and the $2,000 for the defective flooring, the sum of $23,671.64. It further found that there was due to the subcontractors from Thompson & Tomlinson, in the aggregate, the sum of $22,961.05; that there was due from Charles to Groth & Company, in addition to the amount due Thompson & Tomlinson, the sum of $2,450 on account of extra materials, work and labor furnished at his request and by his direction, and adjudged and decreed said sums to be a lien upon the premises in favor of the respective parties. To reverse this decree Charles brings the case here on error.

Mr. JOHN R. SMITH, for plaintiff in error.

Mr. R. HEBER SMITH, Messrs. WILLIAMS & WHITFORD, Messrs. BROWN & SMITH and Mr. CHAS. H. BURTON, for defendants in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

It appears from the certificate to the bill of exceptions that it does not contain all of the evidence introduced upon the trial of the cause, the original exhibits which include the plans and specifications being omitted. These are made in express terms a part of the contract, and are therefore important and essential factors in determining the principal issue in the case. Without them before us we are unable to

determine whether the building was completed in conformity with them or not, or pass upon the sufficiency of the evidence to sustain the conclusions reached by the trial court, and must accept as conclusive its finding that Thompson & Tomlinson had substantially performed their contract, except in the particular mentioned.

It is insisted by plaintiff in error that this finding in itself, by reason of the exception, fails to bring the case within the most liberal rule of substantial performance, since it shows so material a deviation as to entitle Charles to the sum of $2,000 as damages on account thereof, and that the exception neutralizes the force of the finding as to the fact of substantial performance, and leaves the question open for this court to examine the contract in the light of the evidence, and determine whether the condition of the floors was in conformity with its stipulations and the plans and specifications; but for the reason above stated we are precluded from this investigation, and can only look to the pleadings, and ascertain therefrom the theory upon which the case was tried, and determine whether, under all the provisions of the contract therein set forth, such finding can be upheld, and, if so, its sufficiency to support a recovery in this character of action.    Upon an examination of the contract it will be seen that, while performance as to work and materials in conformity with its provisions is made a condition precedent to payment, it also provides that if the work or material are contrary to its requirements the architect shall have authority to remove the same and replace them by proper work and materials at the contractors' cost.    It also appears from the pleadings that although the issue of performance was tendered by the cross complaint of Thompson & Tomlinson, and the answer of Charles, that by way of counterclaim he sought to recoup damages on account of defective floors, and alleged as a ground for such damages that he was compelled " to wholly relay and cover with new flooring said building, and by reason of said acts mentioned of said defendants

Thompson & Tomlinson in respect to said flooring, he was damaged thereby in the sum and amount of $4,000 ; " etc.

And he further avers that on or about the 5th day of May, 1890, Thompson & Tomlinson made and presented a statement and account of extra work and labor ; and thereupon he made and presented to them a statement and account for labor and materials omitted, and also presented a claim for damages, by reason of bad floors, accruing up to that time ; and that being unable to agree, the respective claims and demands were referred to L. Cutshaw, architect, for his examination and decision, both under the terms of said contract and by express agreement of the several parties ; and it was decided by said Cutshaw, among other things, " that for damages as aforesaid by reason of bad floors, there ought to be allowed the defendant the sum of $1,500 ; " etc.  In his prayer he asks, among other things, that an accounting may be had as between him and Thompson & Tomlinson as to the sum, if any, due to them ; and that upon such accounting he may be allowed and credited with his damages in said sum of $4,000, etc.; and that he may recoup the same against their claim under the contract, and that he may be permitted and directed to bring such sum as may be found due from him to said Thompson & Tomlinson into court, etc.

It would seem, therefore, that the finding was in accordance with the issues made by the pleadings, and a proper one in view of the theory upon which the case was tried, and that the plaintiff in error is not now in a position to invoke the application of the rigid rule announced by some courts to the effect that when performance is stipulated for and made a condition precedent to the right of recovery, and the action is solely on the contract, performance in every essential particular must be shown before a recovery can be had, or to insist that under the issues tendered by the pleadings in this case no excuse for nonperformance can be shown, nor recovery of the contract price (less damages on account of omission) be had.  Whether he might, if he had elected so to do, have stood upon his technical rights under the contract,

and successfully resisted payment of the balance of the contract price until a strict performance of all the requirements of the contract was had and the certificate of the architect produced, as provided therein, it is unnecessary to determine, since he has elected to avail himself of his option under the contract to replace the defective flooring and repair the omissions of the contractors in respect thereto, and to submit his claim for the amount expended in the completion of their work as a set-off or counterclaim against the amount, if any, found due them under the contract.   In support of his position he invokes the rule adopted in New York and some other states to the effect that a strict performance is necessary as a condition precedent to recovery on the contract.   Among them, the case of *Van Clief v. Van Vechten*, 130 N. Y. 571, is cited as being particularly in point upon the proposition that when a substantial sum is required to finish the work, a substantial performance has not been had.   In that case the contractor was to furnish materials and erect a building for the net price of $4,023, payable in installments.   Among such installments was the sum of $800, to be paid when the plastering was finished.   He abandoned his contract, leaving the building uncompleted, and refused further performance.   After such refusal the owner furnished materials and employed a workman to finish the building at an expense of $1,905.20, which included $200 for completing the plastering.   The suit was brought by a subcontractor to obtain a lien against the building for materials furnished the contractor.

After referring with approval to the doctrine announced in former cases upon the subject of substantial performance, and expressly finding that the plastering was not substantially finished, and that the abandonment of the work was willful, and the omission to perform intentional, the court say :

" The owner, however, although under no obligation to do so, completed the building herself, according to the contract, which thus continued operative through her action.   After the contractor refused to proceed she performed the contract

for him, as it expressly permitted her to do. As her action was according to the contract, it will be presumed, under all the circumstances and in support of the judgment, that it was under the contract. * * * Instead of pleading a cancellation or rescission in her answer, she asked to have the amount expended by her to complete the building 'allowed as a set-off or counterclaim to any claim of the said defendant Smalle or the plaintiffs herein, or of any of the other defendants herein, in case the court should eventually determine that the said defendant Smalle is entitled to any sum whatsoever under the said contract.' * * * The amount paid by her for this purpose, in legal effect, was paid for the original contractor. The difference between the sum thus expended and the aggregate amount unpaid on the contract with Smalle upon the completion of the entire work, became due under the contract. To the extent of that sum, being the difference between $2,023 and $1,905.20, the lien of the plaintiffs attached, and they are entitled to a foreclosure for that amount."

Thus it appears that the damages allowed as a set-off are much larger in proportion to the contract price and the balance found due than the amount allowed in this case. This decision, by reason of the analogy between the facts and pleadings of that case and those of the case under consideration, clearly sustains the right to recover the balance due upon the contract, less the amount required to repair omissions and defects, under the issues joined. In the case of *Crouch v. Gutmann*, 134 N. Y. 45, the court say:

"While the condition of the carpenter work when the Wadsworths left it in July, was such as to indicate defects and omissions, the correction of which would cost $656.29, it may be observed that such defects upon such estimate of the cost to the amount of $439.29 were remedied through the action of the defendant taken pursuant to his right reserved by the contract. * * * This work having been done by the defendant in the exercise, by his election, of such right, he cannot effectually assert forfeiture in respect

to the deficiency so supplied, but the Wadsworths were entitled to the benefit of the work thus produced and were chargeable to the defendant for the amount of the expense incurred by him in doing it."

See, also, *Murphy v. Buckman*, 66 N. Y. 297.

That there may be a substantial performance, notwithstanding the amount required to remedy defects and omissions may be quite substantial, is shown in several New York cases. Among them, see *Woodward v. Fuller*, 80 N. Y. 312; *Murphy v. Buckman, supra; Crouch v. Gutmann, supra; Phillip v. Gallant*, 62 N. Y. 256.

We conclude, therefore, that the amount of damages allowed is not necessarily inconsistent with the fact of substantial performance; and, it appearing both from the pleadings and proof that the plaintiff in error has relaid the defective flooring, he is not in a position to resist a recovery under the contract on the ground of nonperformance, or the nonproduction of the architect's certificate.

Counsel for plaintiff in error discuss at some length the error predicated upon a preliminary ruling denying the motion to strike out so much of the second defense of Thompson & Tomlinson as attempted to set up an estoppel by reason of the failure of the architect to call their attention to the defective flooring and to object to the poor work as it was being done. If it be conceded that the court erred in its ruling upon this motion, the error was harmless, since the judge who tried the case was not, as counsel assume, controlled by that ruling in his final determination of the case, but allowed damages on account of defective flooring.

The first and second assignments of error are based upon the admission in evidence of a stipulation signed by the contractors and the subcontractors, wherein the respective amounts due the subcontractors were agreed upon. This stipulation not only fixed the amounts due the respective subcontractors from the principal contractors, but further recited that they were entitled to liens on the building for these respective amounts.

To the introduction of this stipulation the plaintiff in error objected on the ground that it was immaterial, irrelevant and improper. It was clearly admissible as evidence against Thompson & Tomlinson to fix the amount due from them to the subcontractors, and the amount of the personal judgments to be rendered against them. For this reason, therefore, the general objection to its admission was properly overruled. But, giving to the objection the force claimed, and conceding that it presented the question of the admissibility of the stipulation as evidence for any purpose against Charles, we still think it was properly overruled. The right of the owner to have an adjudication of the amount due from the principal contractors to a subcontractor, before his property can be subjected to a lien therefor, is well settled, and hence the necessity of making the principal contractor a party to an action by the subcontractor against the owner, unless such adjudication has been already had. The purpose to be subserved by these requirements is that the owner, if compelled to satisfy a subcontractor's claim to relieve his property from a lien, may be credited for the sum so paid as against the amount due the principal contractor; and when, either by the contract or a subsequent agreement between the contractor and a subcontractor, the price of material or labor furnished is fixed and liquidated, and the payment of such price by the owner would be binding against the principal contractor, there seems to be no good reason why such contract or agreement should not, at least *prima facie*, constitute evidence against the owner of the value of such materials or labor. Phillips, in his work on Mechanics' Liens (sec. 204), states the rule on this subject as follows:

" The owner, when the contract is not made immediately by himself or his duly authorized agent, but by his contractor, may show that the price agreed to be paid by the contractor was beyond the fair market value at the time; but, if there is no evidence to show that the materials furnished by a subcontractor are worth less than the price agreed on between him and the principal contractor, he is entitled to a lien for

this agreed price. The owner, when sued by a subcontractor, would be able to impeach the contract only for fraud or mistake. The contract in either case is admissible in evidence."

He cites in support of this proposition: *Cattanach v. Ingersoll*, 1 Phila. 285; *Hilliker v. Francisco*, 65 Mo. 598; *Miller v. Whitelaw*, 28 Mo. App. 639. To the same effect see, also, *Deardorff v. Everhartt*, 74 Mo. 37.

We think, therefore, that the stipulation was not only admissible as against Charles, but, in connection with all the testimony introduced, was sufficient to sustain the finding of the court as to the value of materials furnished by the company, and that they were used in the building.

It furthermore appearing that the claim of the company, and the claims of all the subcontractors, in the aggregate, were less than the amount found due the principal contractors, the allowance of this claim could in no way prejudice the plaintiff in error.

Error is further assigned upon the action of the court below in denying damages on account of failure to complete the building in the time specified. If we were at liberty upon this record to examine the evidence introduced upon this subject, for the purpose of passing upon its sufficiency, we would be compelled to accept the finding of the court as conclusive, since the testimony as to the causes of the delay is conflicting, and there is much that tends to uphold the court's conclusion that the delay was caused, in part at least, by the conduct of plaintiff in error, and that the requirement of the contract in this particular was waived by him.

It is further insisted that the court erred in its finding that Groth & Company were entitled to a lien against the premises and a personal judgment against Charles for the sum of $2,450, as principal contractor. The claim for extras was asserted by Groth & Company and denied by Charles. This controversy also necessarily involved an examination of the plans and specifications, and the conclusion of the court below therefore being based upon such examination, in the

light of conflicting testimony, its finding is conclusive upon this review.

The thirty-fifth assignment of error is predicated upon the refusal of the court to permit counsel for plaintiff in error to examine a paper shown to the witness Thompson to refresh his memory while testifying. His attention had been called to a conversation had with Charles, and he was asked if he had at the time any figures from Charles as to the amount he thought was due. The witness was handed a paper from which to refresh his recollection. He then stated the amount. Counsel for plaintiff in error asked to see the paper, and was refused, the court remarking, "It is received only as bearing upon the question of interest." On cross-examination of the witness counsel did not renew his demand for an inspection of the paper.

Waiving the question whether the demand was made at the proper time, and conceding that the court erred in its refusal to allow counsel to examine the paper, it was nevertheless error without prejudice, since the testimony was received only as bearing upon the question of interest, and the court ultimately made no allowance of interest.

Without noticing in detail the errors assigned upon the admission or rejection of testimony, we think the action of the trial court in these particulars in no way prejudiced the rights of plaintiff in error, and upon a careful examination of the record we find no error that will justify a reversal. The judgment and decree of the district court are accordingly affirmed.

*Affirmed.*