PLANTERS' COTTON OIL COMPANY *v.* GALLOWAY.

Opinion delivered March 15, 1926.

1. MECHANICS' LIEN—TIME OF FILING.—A lien for furnishing materials for construction of a gin plant is acquired by filing a copy of the account with the circuit clerk within 90 days from the time the last item of the materials was furnished.

2. MECHANICS' LIEN—TIME OF FILING.—Though the evidence shows that the owner of a gin plant first contemplated operating the plant with electricity and subsequently changed his plans by adding an oil engine house, the materialman who furnished the materials for constructing the gin plant and the oil engine house, charging all the materials on open account, was entitled to acquire a lien for all such materials by filing his account within 90 days from the time the last item of the account was furnished.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT OF FACTS.

H. Galloway brought this suit in equity against A. L. Barber, trustee for W. J. Somers, bankrupt, and the Planters' Cotton Oil Company, to foreclose a lien for materials furnished and used in the construction of the gin plant of W. J. Somers.

The complaint was filed and summons issued on December 24, 1923. On February 8, 1924, H. Galloway died intestate, and the suit was revived in the name of Cecil E. Galloway, as administrator of his estate.

According to the testimony of Cecil E. Galloway, he was the son of H. Galloway, and the account of materials furnished in rebuilding the gin plant of W. J. Somers amounted to $3,931.36. The account was filed as required by § 6922 of the statutes on December 15, 1923. The account is itemized, and shows that the items were furnished from May 12 to October 5, 1923. On September 21 and 22, 1923, items to the amount of $142.69 were furnished. The account showed that these items were for the engine house. They consisted of certain pieces of lumber, ship-lap and windows.

On September 24, 1923, and on various days thereafter up to and including October 5, 1923, certain pieces

of lumber and nails were furnished. The item of October 5, 1923, was one hank sash cord. Prior to the items just referred to, the last items of lumber furnished were dated September 5, 7 and 11, 1923. H. Galloway made a contract with W. J. Somers to furnish him materials with which to rebuild his gin plant. H. Galloway kept the books, and spoke to Mr. Somers several times about paying the account; but Somers kept putting him off until he could borrow some money with which to pay it. Subsequently W. J. Somers was adjudged a bankrupt. The Planters' Cotton Oil Company had a mortgage on the gin plant and the property on which it was located, and defended this suit in order to assert its right under the mortgage. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of the plaintiff, and a decree was entered of record in accordance with his findings. To reverse that decree, the Planters' Cotton Oil Company has duly prosecuted an appeal to this court.

*W. D. Jones,* for appellant.

*Gray & Morris,* for appellee.

HART, J., (after stating the facts). The record shows that H. Galloway filed an itemized account of lumber and materials furnished for the gin plant of W. J. Somers, verified, as provided by § 6922 of Crawford & Moses' Digest, in the office of the circuit clerk of Lonoke County on December 15, 1923. The record further shows that an amended complaint was filed in the chancery court on December 24, 1923. The filing of the account in compliance with the statute, within ninety days after the last item of the materials was furnished, gives the materialman a lien under the statute. *Burel* v. *East Arkansas Lumber Co.,* 129 Ark. 58; *Hill* v. *Imboden,* 146 Ark. 99; and *Ferguson Lumber Co.* v. *Scriber,* 162 Ark. 349.

It is the contention, however, of counsel for the appellant that the claim for the lien was not filed within ninety days after the last item of the materials was fur-

nished. In making this contention, counsel claim that the materials furnished after the 15th day of September, 1923, were furnished under a separate contract for an oil engine house, and therefore do not constitute a part of the account for materials furnished in building the gin house, cotton house, and cotton seed house, which alone were considered when the first contract for furnishing materials was made. The record does show that Somers first contemplated operating a gin plant with electricity, and that the original contract was entered into with Galloway to furnish materials when this was his intention. Afterwards, when the gin house and cotton and cotton seed houses were about completed, Somers changed his plans, and decided to add an oil engine house. The substitution of an oil engine for an electric one did not have the effect to change the contract originally made by Somers with H. Galloway in any particular. Somers told Galloway that he intended to rebuild his gin plant, and wanted to make arrangements to purchase materials from him for that purpose. Galloway agreed to furnish the materials to Somers in such quantities and on the dates required. He only knew in a general way that he was to furnish materials to Somers with which to rebuild his gin plant. It did not make any difference to him whether Somers made alterations or additions to the plans. Galloway was to furnish lumber and nails to be used in rebuilding the gin plant. It was all one contract, and it did not make any difference to him whether the power to be used in operating the plant was electricity or oil. Any change of plans or additions to the original plans could not in the very nature of things affect the contract of Galloway to furnish lumber, nails and other materials to be used in constructing the gin plant. The oil engine house was built into and constituted a substantial part of the gin house. The first material furnished by H. Galloway was on May 12, 1923, and the last item was on October 25, 1923. A substantial quantity of material was furnished within ninety days of the filing

of the claim, and it is fairly inferable from the evidence
that these items constituted a part of the construction
of the oil engine house, or of the gin house proper.   The
amount of the items furnished within the ninety days is
not the test of whether they are embraced within the
original account.   But the test is whether or not the
items fall naturally and ordinarily within the account.
The size and number of the items furnished within the
ninety days indicated that they were furnished under the
original contract, and not merely for the purpose of
bringing the claim within ninety days after the furnish-
ing of the last item.

According to the testimony of Cecil E. Galloway,
he delivered most of the items which constituted the
account embraced in this action.   He stated further that,
after the gin plant had been completed, his father asked
Somers for payment of the account, and that Somers kept
putting him off until he could borrow some money with
which to pay it.   This constitutes proof of the correctness
of the account.   Indeed, there is no serious contention
that the account is not correct, but the main reliance for
a reversal of the decree is that the claim is barred
because it was not filed within the ninety days provided
by statute.

Again it is insisted that the decree should be reversed
because the court erred in admitting certain slips in evi-
dence to establish the items of the account.   According
to the evidence of Cecil E. Galloway, his father kept the
books, and he used the single-entry system.   In connec-
tion with it, he had a ticket system which served as an
itemized statement of the accounts.   When articles of
merchandise were furnished, three tickets showing the
items were run off of a machine.   One of these tickets
remains in the office, another is given to the purchaser,
and the third is given to the driver to show him what
materials to deliver to the purchaser.   In keeping the
books only the amount of each ticket would be written in
the book.   The system seems to provide a simple, correct

and economical manner of keeping books, and altogether serves as an itemized statement of the accounts so kept. We are of the opinion that no error was committed by the court in permitting the account to be proved in this way.

A careful examination of the record convinces us that the decree of the chancery court was correct, and it will therefore be affirmed.