SEBASTIAN BUILDING & LOAN ASSOCIATION *v.* MINTEN.

Opinion delivered May 5, 1930.

*George W. Dodd,* and *Geo. F. Youmans,* for appellants.

*A. M. Dobbs* and *J. B. McDonough,* for appellees.

HART, J., (after stating the facts). At the time that the Ferguson Lumber Company made the contract with T. B. Westmoreland to furnish him the materials to be used in the construction of the two houses, the latter could not be said to be the owner within the meaning of § 6933 of the Digest. The contract was made prior to the 14th day of February, 1927, to supply the materials, and according to the evidence for the Ferguson Lumber Company, a part of the materials for the houses was delivered on the lots on that day. At this time the title to the lots was in J. C. Pierce. Westmoreland had only an oral contract to purchase the lots, which was not enforceable in any court. It is true that he took possession of the lots, and dug trenches or ditches to be used in the foundations of the houses. Westmoreland's oral contract only fixed the price at which he could purchase the lots, and it contemplated that there should be a future conveyance to him of the lots upon payment of the purchase price, before the sale was consummated. Until then,

he could not charge the lots with the statutory lien, because he was not the holder of any interest in the lots; and because he was not the owner in contemplation of our mechanics' lien statute. Such a lien is an interest in the land, and attaches to the legal or equitable title. It can be established only in the manner provided by statute, which requires the agreement or assent, express or implied, on the part of the owner, whose interest in the land is sought to be charged with the lien. Westmoreland cannot be regarded as the owner within the meaning of the statute before the time of the conveyance to him by Pierce. His subsequent acquisition of the title could not relate back to the date of his parol contract. It was a new title, and there is nothing to show that Pierce gave his consent to Westmoreland agreeing to a lien to be charged against his interest in the land. *Hayes* v. *Fessenden,* 106 Mass. 228; *Saunders* v. *Bennett,* 160 Mass. 48, 35 N. E. 111, 39 A. S. R. 456; and *Courtemanche* v. *Blackstone Valley Street R. Co.,* 170 Mass. 50, 48 N. E. 937, 64 A. S. R. 275. We are of the opinion that Westmoreland, having only an oral contract to purchase, was not the owner within the meaning of our mechanics' lien statute. The conclusion we have reached is supported by our own decisions bearing on the question.

In the construction of an earlier mechanics' lien statute, the court held that a contract for labor and materials, made by a vendee under an oral contract or privilege to purchase, would not subject the legal owner's interest to a lien, even if the latter had knowledge that the labor and materials were being furnished. *Thomas* v. *Ellison,* 57 Ark. 481, 22 S. W. 95. While this court is committed to the rule that the vendee under a valid and enforceable executory contract of sale has an interest on which he could create a lien in favor of mechanics and materialmen under our statute, it is equally positive in holding that in such cases no element of estoppel arises against the vendor by mere knowledge or even his consent that the labor and material were furnished for the

construction of the building, in the absence of some affirmative act which showed that he had consented to subordinate his claim to that of the laborers and materialmen. *Gunter* v. *Ludlam,* 155 Ark. 201, 244 S. W. 348, and *Fine* v. *Dyke Bros.,* 175 Ark. 672, 300 S. W. 375, 58 A. L. R. 907.

In *Mansfield Lumber Co.* v. *Gravette,* 177 Ark. 31, 5 S. W. (2d) 726, the court said that something more than mere possession was necessary, and that there must be some sort of present interest to enable one claiming as vendee to support an agreement for a mechanics' lien under our statute. In short, in order to charge the land with a mechanics' or materialman's lien under our statute, mere possession of the land is not sufficient; but the person seeking to charge the land with a lien under the statute must have some interest either legal or equitable which may be enforced in the courts.

This brings us to a consideration of the construction to be placed upon § 6909 of the Digest, which reads as follows: "The lien for the things aforesaid, or work, shall attach to the buildings, erections, or other improvements for which they were furnished or work was done, in preference to any prior lien or incumbrance or mortgage existing upon said land before said buildings, erections, improvements, or machinery were erected or put thereon, and any person enforcing such lien may have such building, erection, or improvement sold under execution, and the purchaser may remove the same within a reasonable time thereafter; provided, however, that, in all cases where said prior lien or incumbrance or mortgage was given or executed for the purpose of raising money or funds with which to make such erections, improvements or buildings, then said lien shall be prior to the lien given by this act."

Counsel for the claimants of liens for materials and labor contend that the Legislature did not intend to prefer the lien of the mortgagee over that of a laborer or materialman, where the former loans his money on

the representation that it is borrowed for the purpose of improving the mortgaged property, unless it is in fact expended for that purpose, and that it is incumbent upon the mortgagee to establish this fact, as held in the majority opinion delivered by Judge Thayer in *Chauncey v. Dyke Bros.*, 119 Fed. 1. On the other hand, counsel for the mortgagees insist that the dissenting opinion in that case by Judge Sanborn, to the effect that the purpose of the loan should determine its superiority over the claims of laborers and materialmen, carried out the declared intent of the Legislature. The majority opinion in that case expressed the view that this was an unreasonable interpretation of the statute, and one that would enable a mortgagee to defeat an equity, which the statute clearly recognizes as superior, and an equity which it was designed to protect. It is said that the Legislature knew that the lender usually sees to it that the money is used as the borrower promised to use it, and that the lien statute was framed with reference to this well known habit of men who loan money on the security of real estate. We do not think so. The binding force of a mortgage results from the contract between the parties as expressed in the mortgage, and becomes a lien on the real property from the time it is filed for record. The money borrowed pursuant to the terms of the mortgage is turned over to the mortgagor, and the mortgagee no longer has any control over it, unless there should be a special clause in the mortgage looking to that end. As said by Judge Sanborn, this would require the substitution of the word "use" instead of "purpose" in the statute; and the courts have no warrant to do this. There is nothing in the language used in the statute to indicate that the Legislature intended that the mortgagee must see to the use, or the application of the money raised by such mortgages. The legislative declarations was that the purpose of the loan should determine its superiority. The provision of § 6909 expressly declares that the purpose for which the mortgage is given determines its

superiority over subsequent mechanics' liens. The lien in favor of mechanics and materialmen is wholly statutory, and the lien claimant must bring himself within the provisions of the statute in order to be entitled to a lien. If the Legislature had intended the use to which the money borrowed was the test of the superiority of the liens, it doubtless would have so declared, instead of making the purpose for which the money was borrowed the test. After a review of the authorities on statutory interpretation, Judge Sanborn, said: ''Apply the rule which these authorities announce to the statute in hand. It declares without uncertainty or doubt that the liens of prior mortgages whose proceeds were raised for the purpose of making improvements upon the mortgaged property are superior to subsequent mechanics' liens. It says: 'that in all cases where said prior lien or incumbrance or mortgage was given or executed for the purpose of raising money or funds with which to make such erections, improvements or buildings, then said lien shall be prior to the lien given by this act.' The contention is that it intended to except from that declaration the liens of all such prior mortgages the proceeds of which were not actually used to make the improvements. In other words, the argument is that the Legislature enacted that the purpose of the loan should be the test of its superiority when it intended to provide that the use of the loan should constitute that test. But the difference between purpose and use is patent in common parlance, in legislation, and in the law. Statutes which authorize the issue of municipal bonds invariably specify the purpose for which they may be issued and sold. If issued for that purpose, they are valid; if for any other purpose, they are void. But it is a well-established principle, which has been uniformly and repeatedly sustained by the decisions of this court, that the fact that the proceeds of such bonds have not been used for the purpose for which they have been raised constitutes no defense to the bonds. The test of their validity is the purpose for which the proceeds were

obtained, not the use to which they were applied. (Citing authorities). The Legislature of Arkansas could not have been ignorant of the difference between purpose and use when it enacted this statute. It had undoubted power to choose whether the purpose of raising the proceeds of the mortgage loans or their use should determine the superiority of the liens of the mortgages. It chose and clearly provided that the purpose should constitute the test. This was a positive declaration that the use should not constitute it, for the expression of one alternative is the exclusion of the other, and it seems to me that it left no tenable ground for the position that the Legislature intended that any other test than that which it plainly expressed should determine the superiority of the liens of such mortgages. The legal presumption becomes conclusive that the Legislature meant what it so clearly expressed, and that it meant nothing else.''

Under the test prescribed by the statute, laborers and materialmen can learn the purpose for which the money was raised by examining the clerk's records, and, if they do not believe the borrower will use it for that purpose, they may refuse to perform labor or furnish material towards the construction of the contemplated improvement. In any event, the statute should be construed as it was enacted by the Legislature, with its plain declaration that the sole test of the superiority of liens upon lands before improvements are made is the purpose for which the money is raised or borrowed, and not the use made of it. The result of our views on this branch of the case is that the Sebastian Building & Loan Association has a prior lien under § 6909 to the mechanics' and materialmen's liens claimed herein, but that the mortgage of Dr. C. S. Means has no such priority, because it was not recorded.

Section 7381 of the Digest provides that every mortgage shall be a lien on the mortgaged property from the time it is filed for record, and not before. This view is in accord with our own previous expressions on the ques-

tion. In *Shaw* v. *Rackensack Apartment Corp.*, 174 Ark. 492, 295 S. W. 966, it was held that a mortgage for the purpose of raising money to erect a building which was filed prior to the commencement of work by a lien claimant, was superior to a lien for labor and material furnished, notwithstanding that some of the loan, for which the mortgage was given, was used for clearing the title. Again in *Duncan* v. *Travellers Bldg. & Loan Assn.*, 178 Ark. 17, 9 S. W. (2d) 773, it was held that the lien of a mortgage upon land securing a loan for the payment of the purchase price was superior to a materialman's lien, where the materials were furnished two days after the mortgage was recorded.

It is contended by the attorney for Dr. C. S. Means that it would be inequitable to allow, as against him, a single mechanic's lien in favor of the Ferguson Lumber Company for the total amount of the materials furnished for both buildings, and in this contention we think counsel is correct, under the particular facts of the present case. In reaching this conclusion, we are not unmindful of our previous decisions to the effect that where labor is performed, or materials furnished under one contract and for one owner, for two or more buildings on contiguous lots, a single mechanics' lien may be filed against all the buildings. *Tenny* v. *Sly*, 54 Ark. 93, 14 S. W. 1091; *Meek* v. *Parker*, 63 Ark. 67, 38 S. W. 900; *Central Lumber Co.* v. *Braddock Land & Granite Co.*, 84 Ark. 560, 105 S. W. 583; *Burel* v. *East Ark. Lumber Co.*, 129 Ark. 58, 195 S. W. 378; *Hill* v. *Imboden*, 146 Ark. 99, 225 S. W. 330; *Ferguson Lumber Co.* v. *Scriber*, 162 Ark. 349, 258 S. W. 353, and *Crown Central Petroleum Co.* v. *Frick-Reid Supply Co.*, 173 Ark. 983, 293 S. W. 1012. That such holding is in accord with the trend of authority, see case note to 11 A. L. R. at p. 1026.

In all the cases, the houses were built pursuant to one contract, and it might not have been practical for the contractor to have kept a separate account for the materials furnished for each house. There was nothing to

make it inequitable for the contractor or materialman to file a single lien on all the houses. Hence the court in each case properly held that they were not bound to apportion the amount of their lien between the several houses. At the time the work was done and the lien was filed, all the houses were owned by the same party, and there could be no valid objection to treating them all as practically one building and permitting the lien claimant to embrace them all in a single proceeding, and allowing one lien to be filed covering all. In the present case, the two houses were constructed on contiguous lots, of the same materials, size, style and price, both to be erected and completed within the same time. The Ferguson Lumber Company was to furnish all the material for each house. Dr. Means, before the house on lot 2 was commenced, agreed verbally to purchase it when completed for $5,000. He advanced Westmoreland $3,100 of the consideration, $1,150 of which was used in paying the purchase price of the lot. To secure the payment of the $3,100, Westmoreland gave Dr. Means a mortgage on the lot dated February 16, 1927, but this mortgage was never filed for record. On June 29, 1927, Dr. Means filed for record his deed from Westmoreland to the lot, and Westmoreland represented to him all persons who might assert liens for labor or materials had been paid, and that there was nothing against the lot. Westmoreland died after the institution of the present suit without giving his testimony in it. While we are of the opinion that under the authorities above cited one notice or claim for lien was all that was required of the Ferguson Lumber Company, where other rights are to be affected as here, the amount of the lien of the Ferguson Lumber Company should be apportioned, and that a lien should be asserted and enforced against lot 2 for half the amount of the materials furnished, that being the particular amount of material which was furnished for the house on said lot 2. It will be remembered that the buildings are separate and apart, and that the one on lot 2 now belongs to Dr. Means, and that the house

on lot 3 still belongs to the estate of T. B. Westmoreland, deceased. We think this result was recognized in *Tenney* v. *Sly*, 54 Ark. 93, 14 S. W. 1091, although the particular facts of that case did not call for its application.

The claim of the Ferguson Lumber Company for the paint and oil furnished by it for both houses will be disallowed on the ground that it was. not used on the houses. The evidence shows that it was delivered on the two lots to be used in painting the two houses to be erected thereon. The Ferguson Lumber Company was furnishing Westmoreland, who was a house builder, similar materials to be used elsewhere. The person who actually painted the two houses testified that he did so under contract with Westmoreland, and furnished his own paint and oil. Other witnesses testified that the amount of paint and oil furnished by the Ferguson Lumber Company to be used in painting the two houses was largely in excess of the amount necessary for that purpose. A delivery of the material upon the ground where the building is to be constructed is furnishing material within the meaning of the statute, and proof of such fact by the materialman makes a *prima facie* case in his favor. The owner or other party interested may show that the material was not used in the construction of the building, in order to defeat the lien for the material thus furnished. *Van Houten Lumber Co.* v. *Planters' National Bank,* 159 Ark. 535, 252 S. W. 614, and *Standard Lumber Co.* v. *Wilson,* 173 Ark. 1024, 296 S. W. 27.

L. S. Minten filed a claim in the sum of $175 each for painting the houses and furnishing the paint and oil therefor on both houses. The lien therefor is acquired by filing a verified account within 90 days from the date the last item was furnished or the last labor performed. *Ferguson Lbr. Co.* v. *Scriber,* 162 Ark. 349, 258 S. W. 353; *Planters Cotton Oil Co.* v. *Galloway,* 170 Ark. 712, 280 S. W. 999, and *Standard Lumber Co.* v. *Wilson,* 173 Ark. 1024, 296 S. W. 27. Minten filed his claim for a lien under the statute on February 6, 1928. The proof

shows that the last work done on the house on lot 3 was sometime in the month of November, 1927, but it is not shown that it was within 90 days. Therefore we find that he has no lien against the house on lot 3, because his claim therefor was not filed within 90 days after the last work was done, as required by statute.

As to lot 2, the last work done under the original contract was in the month of November, 1927, but Minten in January, 1928, painted a cabinet which had been torn out after the work was finished. Minten did this of his own volition, and not under his original contract. The work done was small and inconsequential. It was to compensate the deficiency in the work done under the original contract, and ought not to preserve the lien. It is the continuity of the claim which gives it effect under the statute. The work under the original contract had already been completed and accepted more than 90 days before the lien claim was filed, and the claim for the work of painting the substituted cabinet by Minten on his own motion did not extend the time for filing his lien for painting the house under his original contract. In a case note to 54 A. L. R., at p. 984, it is said that the rule seems to be well settled that, where a contract to furnish material is to be regarded as completed, a subsequent gratuitous furnishing of material in the nature of a substitution or replacement to remedy a defect in the material originally delivered will not operate to extend the time within which to claim a mechanics' lien. Numerous cases from the courts of last resort of various States are cited which support the text.

The claim of G. W. Shirley for a lien for work done as a plumber will likewise be disallowed, because it was not filed until March 1, 1928, which was more than 90 days after the last material was installed under the original contract. It is sought to bring this claim within the 90-day period by showing that Shirley put in a new sink on December 15, 1927. This work was done as a substitution or replacement of work under the original

contract. Shirley filed a lien for $332.50 on lot 2. Shirley tore out the sink he put in under his original contract, and put in a new one without additional cost because he thought his work was defective. His work had been accepted under his original contract. The lien claim was not filed within the statutory time. The voluntary furnishing a new sink to replace the one installed under the original contract because it was thought by him to be defective did not, under the rule above announced, extend the time for filing his lien. His conduct under the circumstances was not the performance of labor or the furnishing material under his original contract. The substitution was for defective work done under the original contract, and took its place as of that date, and was not in continuation of the original contract.

The Mansfield Lumber Company filed a claim for $417.65 for material furnished to build the house on lot 3. The proof showed that the material was delivered on lot 2, and used in building the house on it. The claimant sought to amend its account after 90 days had expired so as to make its claim for material apply to lot 2. This it could not do. It was required to comply with the statute in order to acquire a lien; and a failure to do so on the ground of mistake could not supply the omission. The lien is created by statute, and the statute must be complied with. The lien is founded on a contract between the owner and the materialman. Hence the account filed must correspond with the contract, and it cannot be amended, after the statutory time has expired, so as to include a different and separate lot or parcel of ground than that embraced in the claim filed within the time prescribed by statute.

It follows that the decree will be reversed, and the cause will be remanded with directions to the chancery court to render a decree in accordance with this opinion; and for further proceedings in accordance with the principles of equity, and not inconsistent with this opinion.

It is so ordered.

McHANEY, J. I dissent from that part of the opinion herein holding that Westmoreland was not the owner of lot 3 at the time he made the contract with Ferguson Lumber Company to furnish the material for the house on lot 3. He was either the owner or the agent of the owner. He was placed in possession of the lot, and the work was started and material furnished prior to the recording of appellant's mortgage. The material lien was therefore prior to the mortgage under many decisions of this court. I am also of the opinion that the rule announced by Judge Thayer in the case mentioned by the majority opinion is the correct rule, and that the appellant was bound to see that the money loaned on the mortgage was actually used in the construction of the building. While we are not bound by the decision of the Circuit Court of Appeals construing our statute, still the courts generally, I believe, have followed same until the decision ought to be held to be a rule of property, and at least it ought to be highly persuasive.

I agree with the majority in other respects.