MONARCH LUMBER COMPANY, a Corporation, Plaintiff and Appellant, *v.* FRANCIS WALLACE, KATHERINE LAUX JOHNSON, a Woman, and JOHN W. HUNTSBERGER, Trustee in Bankruptcy, Defendants and Respondents.

Nos. 9475, 9509.
Submitted May 15, 1957. Decided August 22, 1957.
314 Pac. (2d) 884.

Messrs. Aronow & Hoyt, Shelby, for appellant. Messrs. Church, Harris, Johnson & Williams, and Mr. William A. Reid, Great Falls, for respondents.

Mr. John C. Hoyt, argued orally for respondents in No. 9475 and appellant in No. 9509.

Mr. Carter Williams argued orally for appellant in No. 9475 and respondents in No. 9509.

MR. JUSTICE ANGSTMAN:

These appeals were taken from a judgment in an action seeking to establish and foreclose a mechanics' lien for building materials alleged to have been furnished by plaintiff for the purpose of erecting a house for defendant, Katherine Laux Johnson. The material was alleged to have been furnished to defendant, Francis Wallace, contractor.

Defendant, Katherine Laux Johnson, pleaded a cause of action in her cross-complaint for damages alleged to have been caused by plaintiff through its agent. The court found against plaintiff on its claimed lien and against Katherine Johnson on her cross-complaint. Plaintiff appealed from that part of the judgment which denied its lien and Katherine Johnson appealed from that part of the judgment denying her claim for damages. The appeals have been consolidated in this court. The record shows that the defendants, Katherine Laux Johnson, and Francis L. Wallace, both of Sunburst, Montana, on

May 28, 1951, entered into an agreement whereby Wallace for the consideration of $12,650 agreed to build for Katherine Johnson a frame house including a garage, and to furnish all building material and fixtures necessary to construct the buildings.

The complaint which was filed on February 14, 1952, alleges that between June 21, 1951, and October 8, 1951, the plaintiff sold and delivered to defendant Wallace, as agent and contractor for defendant Johnson, at his special instance and request and for the use and benefit of defendant Johnson, certain goods, wares and merchandise of the reasonable value of $5,428.04; that $204.33 has been paid on the account in merchandise returned, leaving a balance due of $5,223.71 together with interest at the rate of 6 % per annum from October 23, 1951; that plaintiff filed its notice of claim of lien within the time required by law; that defendant, Francis Wallace, upon his petition was adjudged a bankrupt on October 30, 1951, and on January 16, 1952, the defendant, John W. Huntsberger, was appointed trustee in such bankruptcy proceedings; that he thereafter qualified as such trustee and entered upon the discharge of his duties as such.

Defendant Johnson in her answer denied the material allegations of the complaint and pleaded an affirmative defense which will hereafter be considered when we consider Katherine Johnson's appeal. We shall now consider plaintiff's appeal.

Defendant Wallace, the contractor, was named as a defendant but was not served with process and he made no personal appearance in the action. Huntsberger appeared as trustee in bankruptcy and filed a general demurrer to the complaint. The demurrer was overruled. Upon his failure to further plead default was duly entered against him. At the conclusion of the trial defendant Johnson moved the court for judgment in her favor for two reasons. First for failure of proof of the reasonable value of the materials furnished by plaintiff, and second that defendant Wallace was not served with process. Upon sustaining the motion the court made it

clear that its ruling was prompted by the fact that defendant Wallace was not served with process. Plaintiff contends the court erred in this respect, and that since service was had upon the trustee in bankruptcy the requirements of the law were met. This court is committed to the view that ordinarily in a suit to establish a materialman's lien the principal contractor is an indispensable party. Pittsburgh Plate Glass Co. v. Culbertson Hotel Co., 62 Mont. 605, 205 Pac. 957. In that case the principal contractor had not been adjudged a bankrupt.

It is worthy of note that in a case where no relief is sought against the principal contractor some courts hold that he is not an indispensable party. Among the cases so holding are the following: Cooper Mfg. Co. v. Delahunt, 36 Or. 402 51, Pac. 649, 60 Pac. 1; Hand Mfg. Co. v. Marks, 36 Or. 523, 52 Pac. 512, 53 Pac. 1072, 59 Pac. 549; Didier v. Webster Mines Corp., 49 Nev. 5, 234 Pac. 520; Hazard, Gould & Co. v Rosenberg, 177 Cal. 295, 170 Pac. 612.

However, so far as this case is concerned and where the principal contractor has not been adjudged a bankrupt, we adhere to the view announced in the Pittsburgh Plate Glass Company case, supra, which also finds support in other cases. See Eberle v. Drennan, 40 Okl. 59, 136 Pac. 162, 51 L.R.A., N.S., 68, where it was so provided by statute. Godfrey Lumber Co. v. Kline, 160 Mich. 565, 125 N.W. 682; 36 Am. Jur., Mechanics' Liens, section 254, page 158.

The question then is must the contractor be made a party defendant when he has been adjudged a bankrupt, and when the trustee in bankruptcy is a party defendant and has been served with process and has made an appearance in the action.

The Eberle case, supra, treats of this question. It is relied on by both parties to this appeal. In that case the contractor had filed a petition in bankruptcy, as here, and was adjudged a bankrupt. In the action to foreclose the lien the trustee in bankruptcy was made a party defendant, but the principal contractor was not made a party. The court in its first opinion

held that the question of whether the original contractor was a necessary party would not be determined because the question was waived by not raising it in the pleadings. On rehearing the court considered the question on its merits. It likened the situation to a case wherein the principal contractor had died, in which case the court stated the executor or administrator is properly made a party and then stated: "And we can see no reason why the trustee in bankruptcy might not likewise be made the party defendant." [40 Okl. 59, 139 Pac. 167.] The court however concluded that it is not sufficient to name the trustee as a nominal party defendant without praying for relief against him. It said: "We, therefore, hold that the original contractor, *by and through his trustee in this case,* was an indispensable party to the proceeding brought for the purpose of establishing the liens in this case." Emphasis supplied. The court allowed the parties to amend the pleadings "making the trustee in bankruptcy a party, with a prayer for judgment against him." The opinion in that case makes it clear that the principal contractor is a necessary party to the action to establish and enforce a mechanics' lien, but that where as here the contractor has been adjudged a bankrupt and a trustee in bankruptcy has been appointed for him, such trustee in bankruptcy appears for and represents the contractor if the trustee is made a party and if relief is sought against the trustee. Here the complaint asks relief against the trustee. The complaint alleges:

"That the Defendant, John W. Huntsberger, Trustee in Bankruptcy, has, or claims to have, some right, title, interest or estate in, or lien against, the property herein involved but such claim, if any he has, is subsequent and subordinate to the rights of the Plaintiff under and by virtue of its lien aforesaid."

Since the bankrupt's property is in the hands of the trustee for the benefit of creditors, the bankrupt has no interest in defeating the adjudication of an indebtedness against him, and we therefore hold that in litigation having that end in view he is represented by the trustee in bankruptcy. As above noted the

trustee in this case is a party to the action and relief was sought against him.

The court was in error in holding against plaintiff's right to a lien because of the absence of the principal contractor as a party.

Contention is made that the right to a lien must fall for ▮ want of proof of the reasonable value of the materials furnished. The evidence of value consisted of sales slips made out by plaintiff. They contained a description of the items sold, and the price being charged for each item. They were received in evidence without objection except that they were received subject to being connected up by proof that the materials were actually used in the Johnson buildings. It was shown that the charges contained original entries made at or near the time of the particular transactions; that they were made in the regular course of business and were true statements of goods sold and delivered.

The cases are in accord that such evidence is relevant and material and sufficient to make out a *prima facie* case of the reasonable value of the materials furnished. Planters' Cotton Oil Co. v. Galloway, 170 Ark. 712, 280 S.W. 999; Redding v. Posten, 109 Neb. 197, 190 N.W. 488; Maney v. Cherry, 170 Okl. 469, 41 Pac. (2d) 82; Albert S. Eastwood Lbr. Co. v. Britto, 51 R.I. 406, 155 A. 354; 57 C.J.S. Mechanics' Liens, section 308 h, page 965; Nichols Applied Evidence, Mechanics' Liens, vol. 3, section 52, page 3013; Charles v. E. F. Hallack Lbr. & Mfg. Co., 22 Colo. 283, 43 Pac. 548; Lanier v. Lovett, 25 Ariz. 54, 213 Pac. 391; Standard Lbr. Co. v. Fields, 29 Wash. (2d) 327, 187 Pac. (2d) 283, 175 A.L.R. 309.

The *prima facie* case thus made was not controverted. It stands without contradiction and hence is the foundation for a lien if otherwise plaintiff is entitled thereto.

We then come to the question whether the lien should be denied on some other ground. This makes it necessary to consider Mrs. Johnson's cross-complaint, and the evidence bearing upon it. In it she alleges in substance that plaintiff is

estopped from claiming a lien and from claiming to be the owner and holder of an account against her in the sum of $5,223.71 because in May 1951 plaintiff's agent accosted her for the purpose of inducing her to enter into a contract with Francis L. Wallace for the construction of a dwelling house and represented to her that plaintiff was sponsoring and backing Wallace; that she entered into the contract in reliance upon this representation; that plaintiff's agent drafted the contract and induced her to enter into it; that she paid to Wallace the sum of $10,768.20 during the construction of the dwelling house to the knowledge of plaintiff; that Wallace did not complete the dwelling house; that she paid an additional sum of $6,624.22 to complete the building; that during the time Wallace was constructing the building he informed her that plaintiff was fully paid for all materials obtained from plaintiff and used in the building; that plaintiff during the construction period knew that she had paid Wallace for the materials, but failed to inform her that the materials were not paid for out of the moneys she paid to Wallace; that plaintiff knew that she was informed by Wallace that plaintiff was being paid for the materials; that because of the silence of plaintiff regarding the amount of money due it this defendant was misled to her detriment; that because of the foregoing, plaintiff's claim to a lien is without right and the filing of the notice of a lien constitutes a cloud upon her title; that she has been obliged to employ counsel to her damage in the sum of $1,000 which is a reasonable sum to be paid to her attorneys.

The cross-complaint seeks an adjudication that plaintiff is estopped from recovery in the action; that Mrs. Johnson be adjudged the true owner of the property free and clear of claims of plaintiff; that she recover $1,000 as attorneys' fees and $4,742.22 as damages.

The reply put in issue all of the material allegations of the cross-complaint except that it admits that its agent typed the contract made between Wallace and Mrs. Johnson.

As to the cross-complaint the court found that Pat West, who

the evidence on behalf of cross-complainant shows was the agent who induced her to make the contract with Wallace, was the manager of plaintiff corporation at the times involved in this action, but that she failed to prove that he had either actual or ostensible authority to cause plaintiff to be liable on the claim asserted in the cross-complaint; that the plaintiff did not draft the contract in question but that Pat West typed it; that Mrs. Johnson failed to prove any representation made by plaintiff's agent to her, ''from which there was any liability on the part of'' plaintiff to her ''for the acts or breaches of contract of'' Wallace; that Mrs. Johnson failed to prove the ''term or contents of the plan described in the contract'' and that therefore she failed to prove some of the essential terms of the contract without which ''it is impossible to assess damages.''

The court found that plaintiff and its agents had no knowledge of the payments of $10,768.20 made by Mrs. Johnson to Wallace until Wallace ceased construction work; that Mrs. Johnson paid $4,200 more to Wallace than she should have according to the contract; that plaintiff through its agent West did not know of the terms and contents of the agreement between Wallace and Mrs. Johnson; that Mrs. Johnson failed to prove that she was damaged by the acts or representations of plaintiff or its agents.

The evidence relating to the cross-complaint was briefly the following: Mrs. Johnson testified that Wallace came to see her about building a house for her; he being then a stranger to her she refused to let him do so; he came to see her several times; that in May 1951, Wallace and Pat West together came to see her about building a house for her; West then said that the Monarch Lumber Company was backing Wallace unreservedly and assured her that Wallace was a good contractor and carpenter and that he, Mr. West, would supervise the construction from beginning to end; she believed these statements; they came to see her a second time and Mrs. Johnson's mother who was present, after hearing West say that the Monarch Lumber Company was backing Wallace, said, ''In that event I will cash my

bonds and we will have enough to build a house.'' Later in the day Wallace came back with the typed contract which she signed; the record shows that West retained a copy of this contract; she paid Wallace $10,768, but the house was not completed by Wallace; West was to furnish blueprints for the house but he never did so; Exhibit 6 was a letter received by Mrs. Johnson, dated November 13, 1951, and signed by Mr. West reading:

''Monarch Lumber Company

''Building Material Stores Throughout Montana

''Head Office: 925 Eighth Avenue North

''Great Falls, Montana Nov.-13-'51 Montana

''Verbal promises made to Mrs. Johnson by Mr. Wallace in my presen*ts*.

''This house was to be built with the best of material which is known that the cedar siding on the house is of low grade material.

''It was to be furnished with stove, refri*d*gerator, washing machine, water heater and furn*i*ce. These were supposed to be of the make Mrs. Johnson preferred. Some of this was moved into the house and later taken back, and money credited to Mr. Wallace.

''Sidewalks were to be poured, eave troughs hung, backfill hauled into yard, with 6 inches of top soil mixed with 4 inches of fer*d*lizer and landscaped. This was never done.

''On the inside the painting was never done, kitchen cab*inates* not finished, no linol*u*em was laid, floors wer' t sanded and the windows were never completely installed. There was supposed to be concrete flower boxes front and rear of house. Shelter built over back door of house. Sliding doors in bedroom closets, this was never done. Louvers that were purchased for the vent*e*lation of under the house, are not to be found at the house. The out side painting was never finished and is a very mess*e*y job due to a white caulking used to fill cracks. The oak

flooring was to be of select grade and it could not have been any better a No. 2 common at the best.

"Signed Pat R. West

"Mgr. Mon. Lbr. Co.—Sunburst

"Build and own a Monarch Home."

West admitted that he was at Mrs. Johnson's home the third week in May 1951 with Wallace, and that he helped Wallace get the job to build Mrs. Johnson's house. He admitted that he told Mrs. Johnson that he would inspect the job. He inspected it about the time that Wallace quit. He had been in the house about a hundred times. Wallace walked off the job in September or October 1951. The house was then not completed.

West testified:

"Q. What did you do when you went up there to look at the work as it progressed? A. I went up to see what they were doing or what they might need in the future.

"Q. Actually, you weren't inspecting the house and protecting Mrs. Johnson's interest as you represented you were going to do? A. Yes.

"Q. What do you mean by 'yes'? A. I inspected it, yes."

Asked whether the house was built in good workmanlike manner he replied: "I couldn't answer that." Later however in his testimony he answered that what he saw was built in a good workmanlike manner.

He heard Mrs. Laux make the statement about selling the bonds. He denied making a statement to Mrs. Johnson that the Monarch Lumber Company was backing Wallace.

The record shows that Wallace was also building other structures at the same time that he was building Mrs. Johnson's house. West admitted typing the contract between Wallace and Mrs. Johnson. It was typed on Monarch Lumber Company stationery on which was printed "Build and Own a Monarch Home."

West testified that the understanding between him and Wallace was that the Monarch Lumber Company was not to be paid until the fourth and final stage of the Wallace-Johnson contract.

He gave Wallace this much consideration because he was just getting started. The four stages of the contract and the amount of payment for each stage were: First stage $1,000 at the time of signing; second payment $2,204 upon completion of foundation; third, $3,364.20 upon completion of framing; fourth, $6,081.80 upon completion of house.

It should be noted that the court made no specific finding as ▮ to whether West made the statements claimed to have been made to Mrs. Johnson that the Monarch Lumber Company was sponsoring and backing Wallace. The court seems to have had the view that West's authority was not shown to be sufficient to bind plaintiff on such statements and representations.

The circumstances were sufficient to show that as manager he had the ostensible authority to bind plaintiff on such assurances.

Seemingly he had authority to extend leniency to Wallace in transmitting payments made by Mrs. Johnson to Wallace for materials. He had authority as manager of plaintiff to promote the sale of building materials and according to Mrs. Johnson he did so by assuring her that plaintiff was backing Wallace. Mrs. Johnson was corroborated in this respect by Mrs. Jefts. West concededly was present and assisted Wallace in obtaining the contract with Mrs. Johnson about building a home. He was sufficiently interested to type the contract on company stationery and retain a copy of it. He took upon himself the authority to allow Wallace by agreement to receive and retain the first three payments made by Mrs. Johnson without transmitting any of it to plaintiff.

Under the circumstances here shown the court was in error in concluding that plaintiff's manager West was without authority to bind plaintiff by his acts and representations. The applicable rule is stated in Restatement of the Law, Agency, section 261, page 582, as follows: ''A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.''

Whether the agent is acting under the actual or ostensible authority of his principal may be shown by direct evidence or by reasonable inferences to be drawn from the facts proved. Ghiglione v. American Trust Co., 49 Cal. App. (2d) 633, 122 Pac. (2d) 301; Rutherford v. Rideout Bank, 11 Cal. (2d) 479, 80 Pac. (2d) 978, 117 A.L.R. 383; Lange v. Curtin, 11 Cal. App. (2d) 161, 53 Pac. (2d) 185. The fact that West was the general manager of plaintiff corporation presupposes that he was invested with liberal powers in concerns incidental to the business of plaintiff. 2 Am. Jur., Agency, section 87, page 71.

It follows that Wallace was to all intents and purposes an agent of plaintiff in helping promote the sale of building materials for plaintiff and payments made by Mrs. Johnson to him were in legal effect payments to plaintiff. Plaintiff was not entitled to a lien for the materials furnished and for which Mrs. Johnson had made payment in full to Wallace. It then remains to determine to what extent Mrs. Johnson is entitled to damages, if at all.

The record shows that Mrs. Johnson has paid out $3,024.22 to complete the building. She also paid $10,768.20 to Wallace, making a total outlay of $13,792.42. The contract price was fixed at $12,650. She has sustained damages in the sum of $1,-142.42 for which she is entitled to judgment. She also claimed attorney's fees in the sum of $1,000.

R.C.M. 1947, section 93-8614, expressly allows attorney's fees as a part of the costs. Originally the statute permitted the claimant only to recover attorney's fees as costs. That statute was held invalid in Mills v. Olsen, 43 Mont. 129, 115 Pac. 33, at least so far as it applied to a materialman's right. See also Solberg v. Sunburst Oil & Gas Co., 73 Mont. 94, 235 Pac. 761. But that holding was because the statute did not give defendant the equal right to attorney's fees if he were successful. This inequality was pointed out in Wilder v. Chicago & W. M. Ry. Co., 70 Mich. 382, 38 N.W. 289, and other cases cited and quoted from in Davidson v. Jennings, 27 Colo. 187, 60 Pac. 354, 48 L.R.A. 340.

The statute as it now reads allows to the successful party, whether he be the claimant or the property owner, the right to attorney's fees as costs and is valid. 57 C.J.S. Mechanics' Liens section 353, page 1037. It has been so recognized by this court. Luebben v. Metlen, 110 Mont. 350, 100 Pac. (2d) 935.

Mrs. Johnson is entitled to attorney's fees as costs and we find a reasonable sum to be $1,000 as claimed by her.

Mrs. Johnson claimed other items of damages but we find no merit in them. Contention is made and the court found that since no specifications were ever drawn up, it is not possible to fix the damages sustained by Mrs. Johnson. We hold otherwise. The evidence shows that West and Wallace had no difficulty in determining what materials were needed to build the house according to plans and specifications, and the record shows that Mrs. Johnson in completing it did nothing more than to make the house fit for occupancy as a home. She did not add to it anything that was not reasonably contemplated in her contract with Wallace.

Mrs. Johnson is entitled to a judgment of $1,142.42 together with her costs including $1,000 as attorney's fees.

The cause is remanded with directions to modify the judgment in accordance with the views herein stated and as thus modified it will be affirmed.

MR. JUSTICES CASTLES, and BOTTOMLY, concur.

MR. CHIEF JUSTICE HARRISON:

Deeming myself disqualified, I take no part in the determination of this appeal.