PLANTERS LUMBER CO., INC. *v.* THE WILSON CO. INC.

5-4108                                    413 S. W. 2d 55

Opinion delivered February 13, 1967

(Supplemental opinion on denial of rehearing delivered April
10, 1967, p. 1100.)

*H. B. Stubblefield,* for appellant.

*Owens, McHaney & McHaney* and *Robinson, Thornton, McCloy & Young,* for appellee.

LYLE BROWN, Justice. This appeal questions the correctness of the decree of the chancellor, declaring the mortgage lien of appellee, The Wilson Company, Inc., superior to the materialman's lien of appellant, Planters Lumber Company, Inc. Wilson advanced certain monies to Roy Stillman under a construction mortgage. Upon default by Stillman, Wilson brought foreclosure proceedings and made Planters a party, the latter having filed a lien for materials supplied in the construction of a house on each of the two lots mortgaged. The bill for materials and its timely filing are not in dispute. Both parties were awarded judgment against Stillman; he does not appeal.

Separate foreclosure suits were filed, one involving Lot 2, Darby's Subdivision, Pulaski County, and the other involving Lot 4 in the same subdivision. The cases were consolidated for trial. The causes are so similar that they need be considered separately only briefly.

*Lot* 2: Wilson Company conveyed to Stillman by warranty deed dated October 9, 1964, reciting $100.00 and other consideration paid. A week later Stillman executed a construction mortgage to Wilson Company, which was promptly recorded. Wilson pledged $15,000.00 for construction money. However, Wilson withheld $3,200.00, the purchase price of the lot, and delivered $11,800.00 to the disbursing agent. Also, during the course of construction, Wilson directed the disbursing agent to return $465.81 to Wilson for accrued interest owed by Stillman on the note.

*Lot* 4: Wilson Company conveyed to Stillman by warranty deed dated January 6, 1965, reciting $100.00 and other consideration paid. Stillman executed a construction mortgage, dated December 14, 1964, to Wilson Company, which was immediately recorded. Wilson pledged $14,400.00 for construction money, but delivered to the disbursing agent only $11,200.00, having withheld $3,200.00 for the purchase price of the lot. Also, during the course of construction, Wilson directed the disbursing agent to return $394.28 to Wilson for accrued interest owed by Stillman on the note.

As to both lots, Arkansas Abstract Company, the disbursing agent designated by Wilson, paid out the balance of the construction monies for construction purposes, except for some minor expenses incident to the venture; these expenditures are not questioned. All bills for labor and materials were paid except those forming the basis of Planters' claim.

Both parties to this appeal base their claims to priority on Ark. Stat. Ann. § 51-605 (1947). This section, in conjunction with Ark. Stat. Ann. § 51-601, gives

to a materialman a lien upon the improvement for which the materials are furnished. The lien is in preference to any prior lien existing upon said land or building, unless the prior lien was given for the purpose of raising money with which to make the improvement, in which event the lien is prior to the lien given by these two sections.

We hold that, as to Lot 2, Wilson Company has a valid lien for construction money advanced, in the sum of $11,334.19, calculated by taking the sum of $11,800.00, which was turned over to the disbursing agent, and subtracting therefrom the sum of $465.81, which Wilson directed the disbursing agent to return to Wilson for interest on the loan. We further hold that Planters Company is entitled to a second lien on Lot 2 in the principal sum of $2,834.57, the full amount of its materials bill.

We hold that, as to Lot 4, Wilson Company has a valid lien for construction money advanced in the sum of $10,805.72, calculated by taking the sum of $11,200.00, which Wilson turned over to the disbursing agent, and subtracting therefrom the sum of $394.28, which Wilson directed the disbursing agent to return to it as interest on the loan. We further hold that Planters is entitled to a second lien on Lot 4 in the principal sum of $2,181.95, the full amount of its materials bill.

The essence of our modification of the decree of the chancellor is to deny to Wilson Company a lien prior to that of the materialman, first, for money advanced to purchase the lot, and, second, for money owed to it by Stillman for interest on the loan.

*The Purchase Price of the Lots.* Wilson delivered to Stillman a warranty deed which recited a paid consideration and mentioned no encumbrance. Secondly, Wilson caused to be executed and placed of record identical mortgages on the two lots, except for the amounts pledged for construction. We shall use the mortgage on Lot 4 to recite certain pertinent provisions:

"TO HAVE AND TO HOLD The same, with all and singular the tenements, hereditaments and appurtenances thereunto belonging, unto the said Grantee, and to its successors and assigns forever. "And the said Grantor does hereby covenant and agree that Grantor is the lawful owner of the premises above granted, and seized of a good and indefeasible estate of inheritance therein, free and clear of all incumbrances, and that Grantor will warrant and defend the same in the quiet and peaceable possession of said Grantee, its successors and assigns forever, against the lawful claims of all persons whomsoever.

"PROVIDED ALWAYS, That this instrument is made, executed and delivered upon the following conditions, to-wit:

"FIRST: Grantor has applied to the Grantee for a loan in the principal sum of Fourteen Thousand Four Hundred and No/100 Dollars ($14,400.00) to be used solely for and in construction of a one-family residence on the lands above described, and the Grantee has agreed to make said loan for such purposes, and the Grantor is justly indebted to the Grantee for advances made or to be made hereafter by Grantee to Grantor from time to time for such purposes, aggregating the principal sum aforesaid, each such advance to be evidenced by a negotiable promissory note of Grantor, payable to the order of Grantee, of even date with the date such advance is made and in the principal sum thereof, and each such note to bear interest from date until maturity at Six % per annum and from maturity until paid at 10% per annum, said notes to be due and payable as follows: On or before June 14, 1965. Grantee agrees that the acceptance and recordation of this mortgage binds Grantee, its successors and assigns, absolutely and unconditionally, to make said loan and advances. Such advances will be made as requested by Grantor as such work progresses."

Such recitations in these two instruments, the deed and the mortgage, constitute notice to the world that Stillman owns Lot 4 free and clear of any encumbrances. Further, Wilson warrants, not only to Stillman, but to possible laborers, materialmen, and other creditors who may be asked to participate in construction, that Wilson is bound absolutely and unconditionally to make the advances as the work progresses.

With this information gleaned from the record, an alert materialman might desire to make another financial check as the work progresses; namely, to check with the disbursing agent to get the total expended for construction. Had Planters so inquired, it would have found the running account to have shown ample funds unexpended. The disbursing agent had no record of a lot payment; although it may have been aware that Wilson customarily withheld such payments, the disbursing agent would have no cause to know the amount. At least, it is not so reflected in the record.

In phrasing the terms of the construction mortgage, Wilson was seeking to establish a priority for its expenditures. See the proviso in Ark. Stat. Ann. § 51-605, and *Shaw* v. *Rackensack Apt. Corp.*, 174 Ark. 492, 295-S. W. 966 (1927).

Equity dictates that one who seeks a priority of this nature should live up to the clear prerequisite of the requirement that the privileged funds be raised to make such erections and improvements or to build such buildings.

Wilson Company relies strongly on *Ashdown Hdwe. Co.* v. *Hughes,* 223 Ark. 541, 267 S. W. 2d 294 (1954). In this case, J. C. Stewart owned six acres on which there was a residence. It was subject to an outstanding mortgage of $4,500.00. No laborer or materialman could pierce the priority of this mortgage. Hughes loaned Stewart the money with which to satisfy this mortgage and took a mortgage from Stewart covering this loan.

In addition, Hughes committed himself to advance $,5-500.00 with which to build four cabins. Hughes, in clearing the land and residence of the mortgage for $4,500.00, succeeded to the same enviable position as the original mortgagee to whom Stewart had mortgaged the premises, that is, Hughes held a lien which no laborer or materialman could pierce. As stated in the concurring opinion by Justice McFaddin, Hughes' mortgage for the $4,500.00 that he advanced was superior to any materialman's claim for materials which might be furnished *after* the date of the mortgage. The majority opinion in that case concedes that this advancement was not used for construction purposes but reasons that it enhanced the owner's property, leaving the impression that this fact justified giving Hughes priority. We think the principle of subrogation, mentioned by Justice McFaddin, would have more appropriately described the basis for Hughes' priority.

Wilson Company's position is entirely different from that of Hughes. Wilson caused a deed to Stillman to be recorded, which reflected full consideration having been paid. Then Wilson obtained a mortgage wherein the advancement of stated construction funds was guaranteed. Wilson "padded" the mortgage with the price of the lot and retained the money. In the Ashdown case, Hughes actually advanced the money to clear the Steward lot and recited in his (Hughes') mortgage that Stewart was indebted to Hughes' "separate estate" in that amount.

Wilson Company would defend its use of a part of the funds for payment of the lots and for interest, on the theory that a construction money mortgage has been held to be superior, notwithstanding the use of the money for other purposes. Wilson cites two cases on this point, namely, *Shaw v. Rackensack Apt. Corp.*, 174 Ark. 492, 295 S. W. 966; and *Sebastian B. & L. Assn. v. Minten,* 181 Ark. 700, 27 S. W. 2d 1011 (1930). We are not unmindful of the fact that it is the "purpose" and not the "use" of the funds that is controlling. It is also

recognized .that the purpose, as stated in the mortgage, is paramount. But where it is not disputed, as here, that the lender withheld from the amount of construction funds stated in the mortgages, the cost of the two lots, and withdrew from advancements to the disbursing agent the interest monies, the lender cannot be held to claim priority in these amounts. The ''purpose'' doctrine cannot be used to prohibit a showing that the amount stated in the mortgage was never advanced.

On appeal, and for the first time, Planters makes the contention that Wilson Company is liable to it for the amounts withheld, plus the money returned to Wilson for interest. Planters cites *Lyman Lamb Co.* v. *Union Bank of Benton,* 237 Ark. 629, 374 S. W. 2d 820.

In its answer and cross complaint, Planters did not seek personal judgment against Wilson Company; Planters pleaded its lien and prayed that Wilson Company's lien be declared inferior to Planters'; it prayed for personal judgment against Stillman, and asked for a sale of Stillman's property if the judgment be not paid within the time fixed by the court.

Planters contends that this court should treat the pleadings as amended to conform to the proof, and cites *Railway Co.* v. *Triplett,* 54 Ark. 289, 15 S. W. 831, 16 S. W. 266; *Kansas City Southern Ry.* v. *Rogers,* 146 Ark. 232, 225 S. W. 640; and *Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. 2d 553. These holdings justify the *trial court* in treating pleadings as amended, when the defects supplied by the proof are germane to the issues actually pleaded. But here, Planters' proposed amendment, which it seeks from this court, would border on stating a new cause of action.

In the early stages of the trial, Wilson's first witness revealed that Wilson had withheld the purchase price of the lots from the funds pledged in the mortgage for construction. Notwithstanding this development, Planters at no time asked the trial court to treat the

pleadings as amended so Planters could pursue Wilson for these funds withheld. So naturally the trial court had no opportunity to rule on this point.

Again, just before all testimony was concluded, counsel for Wilson stated that the only question in controversy was the question of priority of the lien of his mortgagee client, as compared to the materialman's lien of Planters. Equity would dictate that at this point Planters should have appraised court and counsel of a claim for judgment against Wilson for the money Wilson diverted from the construction funds.

Under these circumstances, we hold that Planters' contention for judgment *in personam* against Wilson—being raised for the first time in this court—must be denied.

The cause is remanded, with directions that the decree of foreclosure be modified in such respects as are necessary to harmonize with the rulings herein, and in order that final proceedings of foreclosure and disbursement may be conducted.