THE FIRST NATIONAL BANK OF CONWAY,
ARKANSAS *v.* CONWAY SHEET METAL CO., INC.

5-4504                                    428 S. W. 2d 293

Opinion delivered May 27, 1968

*Robert W. Henry* and *J. Ted Blagg,* for appellant.

*Clark, Clark & Clark,* for appellee.

CARLETON HARRIS, Chief Justice. T. & C. Construction Company was the owner of Lot 8, Heritage Subdivision, in Conway. This lot, along with others, was subject to a mortgage held by Capitol Savings and Loan Association, such instrument providing that any lot which was subject to the mortgage would be released by payment of $2,000.00 toward retirement of the debt. Lot 8 was sold by T. & C. Construction Company on January 31, 1966, to John W. Fent and wife, the consideration being $2,900.00. First National Bank of Conway, appellant herein, loaned the amount of the purchase price to the Fents, this indebtedness being evidenced by a note for that amount, signed by Fent and his wife, and by the president of T. & C., George Shaw, Jr. Two thousand

dollars of this loan was paid at that time to release the lot from the Capitol Savings and Loan Association mortgage, and the $900.00 was paid to T. & C. by deposit to its account. The bank officer who handled the transaction knew the specific purpose for which the $2,900.00 would be used.

On February 2, 1966, the Fents executed a mortgage to the bank on Lot 8, which recited an obligation on the bank's part to lend $12,900.00 to be used solely in the construction of a residence on this lot, funds to be advanced from time to time as the work progressed. The bank recorded the mortgage, and did, over a period of time, advance $10,000.00, which the Fents used to pay the general contractor. Thereafter, the Fents encountered financial difficulties, and Conway Sheet Metal Company, Inc., appellee herein, and other sub-contractors, filed suits to foreclose materialmen's and laborers' liens, and the bank sought to foreclose its mortgage. On trial, the court found the bank's mortgage to be a valid construction mortgage upon the property in question, prior and superior to all asserted liens. A few months later, following our decision in the case of *Planters Lumber Company, Inc.* v. *The Wilson Company, Inc.*, 241 Ark. 1005, 413 S. W. 2d 55, appellee filed a motion to vacate the judgment, and on March 24, 1967, still within term time, the Chancery Court set aside and vacated the order of distribution which it had earlier entered, insofar as it pertained to the relative priority of appellee's claim. The cause was thereafter submitted upon the stipulation of the parties, and the court, on May 19, entered a new decree in which it held, as follows:

First, that all costs should be paid; second, that First National Bank should be paid the sum of $13,-666.98, representing the $10,000.00 actually advanced for construction purposes, the $2,000.00 advanced in discharging Lot 8 from the mortgage in favor of Capitol Savings and Loan, and $1,666.98, representing interest, costs, and attorney fees provided for in the note and

mortgage held by the bank. Third, the court held that appellee should be paid the sum of $1,133.49, it having established its right to a lien upon the property in the amount of $1,472.06.

"* * * Said lien claimant is entitled to share pro rata in any sums remaining in the hands of said commissioner after payment of the two aforementioned prior claims upon said funds, pro rata and to the same extent as if all other lien claimants remained parties to this action, in which event Conway Sheet Metal Company, Inc., would be entitled to receive a total of 77% of its aggregate lien claim of $1,472.06."

Finally, the decree directed that, since other lien claimants had not moved to set aside the original decree, any balance of funds remaining would be paid to the bank to apply on the indebtedness owed it by the Fents and George Shaw, Jr. From the decree so entered, the bank brings this appeal. Appellee cross-appeals from that part of the decree which awards the bank a first lien upon the property involved for any amount above the $10,000.00 actually advanced for construction purposes, plus interest, costs, and attorney fees therein.

The priority given the bank on the $10,000.00 advanced by the bank for construction is not questioned, the mortgage having been recorded before construction was begun, the bank being obligated to advance that amount, and admittedly having done so. Therefore, the only items involved in this litigation are the $2,000.00 advanced for release of the lot, and the $900.00 which was used to pay the balance due the seller of the lot. Appellant asserts that it is entitled to the entire $2,-900.00, and appellee asserts that it is entitled not only to priority over the $900.00, but also to priority over the $2,000.00.

The question then is, "Can a construction money mortgagee, who is obligated under the mortgage to ad-

vance a certain sum of money solely for construction purposes, divert a part of the funds to some other purpose, and still claim (as to the funds diverted) the protection that would be afforded had the entire amount been used for construction? Appellant relies in large measure, upon *Ashdown Hardware Company* v. *Hughes*, 223 Ark. 541, 267 S. W. 2d 294, and argues that the controlling circumstance is the purpose for which the money was borrowed.

*Hughes* is easily distinguishable from the case at hand in that there, the portion of the money which was to be used to retire an already existing mortgage was given particular mention in the new mortgage, same providing that the grantors were justly indebted to the lender of the money in the amount of $4,500.00; the instrument further recited, "And this mortgage likewise secures an additional advance to be made by the mortgagee in the total sum of Five Thousand, Five Hundred dollars * * * ." This last amount was to be used for the construction of tourist cabins. In the instant case, according to the mortgage given, the entire $12,900.00 is "to be used solely for and in the construction of a residence upon the lands hereinabove described, and Grantee has agreed to make said loan for such purposes, and Grantors are justly indebted to Grantee for advances made or to be made hereafter by Grantee to Grantors from time to time for such purposes, aggregating the principal sum aforesaid* * *. Grantee agrees that the acceptance and recordation of this mortgage binds Grantee, its successors and assigns, absolutely and unconditionally to make said loan in advances. Such advances will be made as requested by Grantors as such work progresses."

The distinction is at once apparent, for in *Hughes*, materialmen and laborers could quickly ascertain that, though the entire amount loaned by the mortgagee was $10,000.00, only $5,500.00 was to be used for construction.

In *Planters Lumber Company, Inc.* v. *The 'Wilson Company, Inc., supra,* we held that where a lender withheld certain sums from the amount of construction funds stated in the mortgage, *inter alia,* the cost of the lots, he could not claim priority in those amounts withheld. Appellant endeavors to distinguish the case before us from *Wilson* by pointing out that there, The Wilson Company owned the lots, and did not advance any money for the payment of same, nonetheless holding out the price of the lots, while here, the bank actually did advance the $2,900.00, which was used for the purchase of Lot 8. It may be, from the standpoint of equity, that appellant, in the present case, is in a better position than Wilson— but the principle which is controlling is exactly the same. Actually, *Wilson,* to some extent, modified earlier holdings in that the following principle is announced: Where a construction money mortgage recites that a certain amount of money will be advanced for construction—it must be used for that explicit purpose if the mortgagee is to have priority over lien holders. Certainly, this is only fair. A materialman or laborer, who plans to furnish materials, or labor, on a particular job is entitled to know how much money the lender is bound absolutely and unconditionally to advance as work progresses. As stated in *Wilson*:

"With this information gleaned from the record, an alert materialman might desire to make another financial check as the work progresses; namely, to check with the disbursing agent to get the total expended for construction."

It might also be mentioned that the purpose clauses in *Wilson* and the present case are practically identical. Appellant asserts that a decision adverse to their side of the case "cannot help but result in great harm to the building industry and the well-being of the state, as the impact of this decision will be felt for many years to come. That is the primary reason for this appeal." We are unable to agree with this statement, for there

is more than one way that the bank can give itself absolute protection. One has already been mentioned in this opinion, in referring to the *Hughes* case. We see no great difficulty in having the mortgage recite that a portion of the money (giving the amount) has, or will be, used to pay off an existing indebtedness. Complete protection for the full amount (advance for retirement of indebtedness and construction advances) is thus afforded.

In accordance with what has been said, it follows that the court erred in giving the bank priority on any amounts advanced in excess of the $10,000.00 used for construction. The decree is therefore affirmed on direct appeal (involving the $900.00), and is reversed on cross-appeal (as to the $2,000.00), and the cause is remanded with directions to enter a decree not inconsistent with this opinion. It is so ordered.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot distinguish this case from *Sebastian Building & Loan Association* v. *Minten*, 181 Ark. 700, 27 S. W. 2d 1011. There the borrower agreed to buy a lot for $1,000.00. He then obtained a loan for construction purposes from the savings and loan association. On February 14th, the borrower signed the mortgage with the "construction purpose clause." The lender gave the seller a check for $1,000.00 of this loan and the deed to the borrower was then delivered. The deed and mortgage were recorded simultaneously. Counsel for the lien claimant contended that the lien of the mortgagee was not preferred over that of the lien claimant where the loan was made upon the representation that it is borrowed for the purpose of improving the mortgaged property, unless it is in fact expended for that purpose and that it is incumbent upon the mortgagee to establish this fact. This court then specifically held that the *purpose* for which the mortgage was given determined its superiority over

subsequent mechanic's liens. While the trial court had held that the mechanics and materialmen had a lien on a parity with the lender's lien to the extent of $1,000.00 but superior to the lender's lien for the balance of the loan, this court held that the lender's lien was the prior lien. One of the authorities cited for this decision was *Shaw* v. *Rackensack Apartment Corporation,* 174 Ark. 492, 295 S. W. 966, where it was clearly held that a mortgage given to obtain money to erect a building given prior to commencement of the work was superior for its full amount to a lien for work and materials going into the construction, notwithstanding the fact that a portion of the loan proceeds was used for clearing the title to the land. I submit that neither case has been overruled or limited in respect to this question by any subsequent decision. The *Minten* case was cited as authority and followed in *Clark* v. *General Electric Co.,* 243 Ark. 399, 420 S. W. 2d 830.

In my opinion, the decision in *Planters Lumber Company* v. *Wilson Co.,* 241 Ark. 1005, 413 S. W. 2d 55, did not overrule, limit or modify the rule in the *Minten* case or the *Shaw* case, both of which are mentioned in that opinion without any suggestion that they were not correct. They simply were held inapplicable to the facts. In the *Wilson Company* case the decision turns entirely upon the fact that the lender owned the property and delivered to the borrower a deed reciting that the purchase price was paid, without mention of any encumbrance. The lender *then* caused this deed to be recorded. *Thereafter,* the borrower executed the construction money mortgages. After the mortgage was executed, the lender withheld the purchase price of the lot in spite of its *previous* representation that the purchase price had been paid.

The distinction pointed out in the *Clark* case applies here. Prior to the making of this loan, appellant never at any time or in any way represented that the purchase price of the lots had been paid prior to the loan, nor

did it receive or retain any part of the purchase price.

I submit that we are dealing with rules of property which should not be lightly regarded or overturned.

While the deed in this case was dated January 31, 1966, it was not delivered until February 2, 1966, the date of the construction money mortgage and the date of the advance of $2,900.00. Two thousand dollars of this was by check for the purpose of paying off a first lien on the property held by Capitol Savings & Loan Association. The balance of the purchase money due T. & C. Construction was paid by depositing $900.00 to its account. This advance of $2,900.00 was evidenced by a note dated February 2, 1966. The advance thus came after the loan was made.

It must be remembered that the statutes we are considering are designed to protect a lien of mechanics or materialmen and that the purpose is not to assure them of a source of funds for payment.

If appellant had not advanced the money to pay for the lot, the liens of the materialmen and mechanics would have been subject to these prior liens of $2,900.00 insofar as the land is concerned. Ark. Stat. Ann. § 51-605 (1947) only gives priority over existing encumbrances on the building erected. By the court's decision, the position of these lienors has been improved at the expense of appellant. Their liens are now upon both land and building, subject only to the lien for $10,000.00 advanced for construction. If the bank had advanced the entire $12,900.00 to the borrower without the purchase price having been paid, the mechanics' and materialmen's liens would be subject to the $12,900.00 plus the original debt on the property insofar as the lot is concerned and to $12,900.00 on the building. Or if the bank had advanced the $12,900.00 to the borrower and he had paid for the lots without the bank's knowing he intended to do so, the mechanics' and materialmen's

liens would still have been subject to the $12,900.00 on the lot and building. The bank was not acting for its own benefit by withholding funds as was the case in *Planters Lumber Company* v. *Wilson, supra.*

There is a distinction in the *Hughes* case not noted in the majority opinion. The $4,500.00 was advanced at the time the loan was made, but the balance was not to be advanced until the various cabins to be built were completed. The court there relied on the *Minten* case to declare priority in favor of the mortgagee for the entire debt, and followed the rationale of that case and the *Rackensack* case in giving priority for that part advanced to pay off the mortgage on the land.

I cannot follow the suggestion that there is any real difference in the *Minten* case and the *Hughes* case insofar as the point raised here is involved. Nor can I follow the reasoning by which the bank lost when it advanced the full amount of the loan and acted as much for the benefit of appellee as anyone.

I would reverse on direct appeal and affirm on cross-appeal.