A. F. HOUSE, TRUSTEE v. JAMES S. SCOTT, D/B/A SCOTT LUMBER CO. ET AL

5-4555                                              429 S. W. 2d 108

Opinion delivered May 27, 1968
[Rehearing denied July 15, 1968.]

James L. *Sloan* and *Stanley E. Price*, for appellant.

*Tanner & Wallace* and *Owens, McHaney & McHaney*, for appellees.

CONLEY BYRD, Justice. Involved in this appeal are the competing priorities between appellant A. F. House, Trustee, (a successor in interest of Modern American Mortgage Corporation), holder of a mortgage, and appellees and cross-appellant James S. Scott, d/b/a Scott Lumber Company et al, holders of material liens on Lot 27, Plymouth Park Subdivision, an addition to the City of Little Rock, Arkansas.

It is conceded that the materialmen's liens have been properly perfected and that the mortgage was recorded before the commencement of construction. All arguments on this appeal concern the construction of the mechanic's lien act, Ark. Stat. Ann. § 51-605 (1947), and the terms of the mortgage. The provisions of the mortgage here involved are as follows:

"Grantor has applied to the Grantee for a loan in the principal sum of Eleven Thousand Five Hundred Fifty and No/100 Dollars ($11,550.00) to be used solely for and in construction of a one-family residence on the lands above described, and the Grantee has agreed to make said loan for such purposes, and the Grontor is justly indebted to the Grantee for advances made or to be made hereafter by Grantee to Grantor from time to time for such purposes, aggregating the principal sum aforesaid, each such advance to be evidenced by a negotiable promissory note of Grantor, payable to the order of Grantee, of even date with the date such advance is made and in the principal sum thereof, and each such note to bear interest from date until maturity at Six% per annum and from maturity until paid at 10% per annum, said notes to be due and payable as follows: On or before January 13, 1966. Grantee agrees that the acceptance and recordation of this mortgage binds Grantee, its successors and assigns absolutely and unconditionally, to make said loan and advances. Such advances will be made as requested by Grantor as such work progresses.

"Grantee in its discretion may require the Grantor to furnish to it, its successors or assigns, certificates of supervising architect as to partial completion prior to making any advance which it has agreed to make hereunder."

Our mechanic's lien preference statute, § 51-605, provides:

*Preference over prior liens—Sale and removal of improvement under execution.*—The lien for the things aforesaid, or work, shall attach to the buildings, erections or other improvements, for which they were furnished or work was done, in preference to any prior lien or incumbrance or mortgage existing upon said land before said buildings, erec-

tions, improvements or machinery were erected or put thereon, and any person enforcing such lien may have such building, erection or improvement sold under execution, and the purchaser may remove the same within a reasonable time thereafter; *Provided, however, That in all cases where said prior lien or incumbrance or mortgage was given or executed for the purpose of raising money or funds with which to make such erections, improvements or buildings, then said lien shall be prior to the lien given by this act.* (Emphasis supplied.)

The record shows that of the $11,550, only $8,277.50 was given by the mortgagee to its disbursing agent, Arkansas Abstract & Guaranty Company, to be spent for the benefit of the mortgagors, Roy Stillman and wife. Only $7,389.30 of this sum was disbursed. Of that, $4,-639.30 went for payment of labor performed and materials used in the construction of the building; $1,700 was paid to the mortgagee to release the lot from a prior mortgage given by John E. Olsen and wife to the mortgagee; and $1,050 was paid to John E. Olsen and wife as the balance due on the $2,750 purchase price of the lot. The record further shows that the mortgagee knew of such lot payments. Construction of the house was not completed but abandoned by Stillman.

The trial court ruled that the $1,050 payment to Olsen was an improper payment; that appellant was obligated to pay the $1,050 plus the remaining unexpended portions of the construction money mortgage into the registry of the court for the use and benefit of the lien claimants, whose liens totaled $4,731.81; that the amounts of $183 paid for hazard insurance, $45 for an FHA appraisal fee, and $450 for an attorney's fee were advances secured by the mortgage, and that when such sums ordered were paid into the court's registry, the mortgagee would have a lien superior to the mechanic's lien claimants for the full amount secured by the mortgage.

The points for reversal relied on by the mortgagee are:

I. The Chancellor erred in fastening a lien on undisbursed construction funds in favor of mechanics and materialmen.

II. There was no legal basis for the chancery court's preferential treatment of mechanics and materialmen as to construction funds spent for realty.

Cross-appellant James S. Scott raises the following points for reversal:

I. The trial court erred in declaring construction money mortgage lien to be superior to appellee's mechanic's lien.

II. The trial court erred in allowing appellant a credit of $1,700.00 to pay pre-existing mortgage indebtedness.

III. The trial court erred in declaring judgment to appellant for attorney fees and court costs superior to appellee's mechanic's lien.

These issues arise as the result of our decisions in *People's Bldg. & Loan Assn.* v. *Leslie Lbr. Co.*, 183 Ark. 800, 38 S. W. 2d 759 (1931); *Sebastian Bldg. & Loan Assn.* v. *Minten*, 181 Ark. 700, 27 S. W. 2d 1011 (1930); *Ashdown Hardware Co.* v. *Hughes*, 223 Ark. 541, 267 S. W. 2d 294 (1954); *Lyman Lamb Co.* v. *Union Bank of Benton*, 237 Ark. 629, 374 S. W. 2d 820 (1964); and *Planters Lumber Co.* v. *Wilson Co.*, 241 Ark. 1005 and 241 Ark. 1100, 413 S. W. 2d 55 (1967).

In the *Minten* case, we had under consideration a lump sum mortgage wherein the issue was whether the statute (Ark. Stat. Ann. § 51-605) required the lender to see to the use or application of the money raised by

the mortgage or whether the purpose of the mortgage was controlling. In holding that the purpose for which the money was borrowed was controlling, we there said:

"The binding force of a mortgage results from the contract between the parties as expressed in the mortgage, and becomes a lien on the real property from the time it is filed for record. The money borrowed pursuant to the terms of the mortgage is turned over to the mortgagor, and the mortgagee no longer has any control over it, *unless there should be a special clause in the mortgage looking to that end.* As said by Judge Sanborn, this would require the substitution of the word 'use' instead of 'purpose' in the statute; and the courts have no warrant to do this. There is nothing in the language used in the statute to indicate that the Legislature intended that the mortgagee must see to the use, or the application of the money raised by such mortgages." (Emphasis supplied.)

In the *Ashdown* case the mortgage specifically recited that $4,500 of the $10,000 loan was made to clear the title of the land of an existing loan, and that the balance of the $10,000, which was $5,500, was to be paid out in four installments of $1,375 each upon completion of each of four tourist cabins. We there held that the $10,000 mortgage took priority over material liens such as those involved in this case.

In the *Lyman Lamb* case the mortgage provided:

"This loan shall be used for the purpose of construction of a dwelling house on the above described property and shall cover and secure additional advances to be made by mortgagee to mortgagors in the total amount not to exceed $14,500."

We there held that, since the mortgage terms did not bind the mortgagee to make the future advances,

made subsequent to the date of the commencement of construction did not take priority over materialmen's liens.

In the *Planters Lumber Co.* case, Wilson Co. had a mortgage similar to the one here involved, in which it had agreed to advance $15,000. The proof showed that Wilson withheld $3,200 of the $15,000 for payment of the lot that it had conveyed to the mortgagor. We there held that Wilson Co. was not entitled to priority for the purchase price of the lot and, contrary to the argument that the mortgagee recitals about the purpose of the loan, under the *Minten* case, were controlling irrespective of the application of the funds, we said:

"In *Minten* the lender disbursed the full amount of the mortgage money. In *Minten* there was no guarantee placed of record whereby the building and loan association was committed to a stipulated advancement for construction purposes. In both these respects the opposite is true in the case at bar."

Whether valid or not, it will be observed that our cases have been much more liberal with the lender where there was a lump sum advancement for construction money purposes than where future advances were involved. This is partly due to the technical requirements of draftsmanship necessary to make a future advance relate back to the date of the filing of the mortgage, as shown in the *Lyman Lamb* case, *supra.*

Our cases point out that the mortgage, when placed of record, is constructive notice to the world of its terms, including the amounts to be advanced during construction of a building. This notice is important to materialmen such as appellees in this case. By reading the instrument they are able to ascertain that "as the work progresses" the builder will have available, for the payment of materials, periodic advances from the mortgagee which the builder has contracted will be used solely in the construction. In *Jack Collier East Co.* v. *Barton,* 228

Ark. 300, 307 S. W. 2d 863 (1957), we held that a construction money mortgage was not entitled to priority unless the "construction purpose" was stated in the mortgage.

The technical draftsmanship requirements for future advances and recordation of construction money mortgages as set forth in the foregoing cases probably account for the specific language used in the mortgage here involved.

Thus the issue arises: Can the mortgagee who has bound the builder to use the funds "solely for and in construction of a one-family residence" through its own agent knowledgeably apply the funds to uses other than construction (such as the purchase of the lot) and still claim the benefit of the purpose language in the mortgage? We think the answer can be found in the *Minten* case, where we pointed out that the "purpose recital" of a construction money mortgage could be varied by specific language in the mortgage. Our answer to the question propounded is that where the mortgagee binds the builder to use the money SOLELY in construction of a building, we hold that for purposes of priority the mortgagee is also bound when disbursing the money through its own agent to expend it for "construction purposes only."

For clarification to the construction industry, we point out that a lender, if it so desires, may make both a purchase money mortgage and a construction money mortgage, both of which could be superior to a mechanic's lien, but that when it undertakes to combine the two in the same instrument it should follow the *Ashdown* case.

We also point out that when a mortgage has in good faith been placed of record for construction money purposes, the lender may properly make cash advances to the mortgagor in accordance with its agreement and will

not be charged with any knowledge or application of the use of the funds made by the mortgagor even though the mortgagor violates the terms of the recorded mortgage and uses the funds for purposes other than construction. In other words, the only duty cast upon the lender by the statute is that it disburse the money for construction money purposes. Once it has disbursed the money to the mortgagor for such purposes, the lender's obligation under the statute is discharged, except for perhaps those instances involving self-dealings—*i. e.*, it can not put form above substance by handing the money to the mortgagor with one hand and taking it back in the other.

We do not intend this opinion to be understood as saying that a lender who in good faith has made a construction money mortgage will not be protected when he is subsequently forced to purchase or pay off an outstanding lien or title to protect its security. Good faith in each instance is the guide.

Although we do not here reach the issue involved in the *Minten* case, because of the language of the mortgage here at issue, we think it fair to point out to the industry that in the future we will re-examine the *Minten* case to the extent that it may hold that a lender can knowledgeably disburse construction mortgage money for purposes other than construction and still claim priority over the mechanic's lien.

Our mechanic's and materialmen's lien statutes extend only to land and improvements thereon, Ark. Stat. Ann. § § 51-601 and 51-605 (1947), and do not extend to any fund or money except in the case of a bond executed in favor of mechanics and materialmen under Ark. Stat. Ann. § § 51-632—51-637, 51-641 (Supp. 1967). *Stewart-McGehee Constr. Co.* v. *Brewster and Riley Feed Mfg. Co.*, 171 Ark. 197, 284 S. W. 53 (1926). Thus it follows that in the absence of an express contract making some different provision, the exclusive security

of a mechanic of materialman is the land or improvement.

Here we can find no language making the materialmen third party beneficiaries of the mortgage. Consequently, unless the materialmen are entitled to an equitable garnishment, the trial court erred in requiring the mortgagee to pay into the registry of the court the difference between the face amount of the mortgage and the portions of the mortgage properly advanced for construction purposes. The record is clear that the mortgagor abandoned his construction contract with a partially completed building. Therefore, there was no money owing by the mortgagee to Stillman that an equitable garnishment could reach.

The cross-appellant argues that since the mortgage required a construction of the building, the materialmen are entitled to priority under the *People's Bldg. & Loan* case, *supra*. In that case the vendor of the property, as a consideration for a $20,000 sale, took a contract in which the vendee paid $500 down and was required to make certain improvements on the property. We there held that the vendor, by requiring the work in question to be done, had subordinated his purchase money claim to the lien of the mechanics and materialmen.

The construction money mortgagee stands in a much different position than the vendor in the *People's Bldg. & Loan* case. The first reason is that the statute places the construction money mortgagee in a different position; the second is that the construction money mortgagee furnishes funds with which materials and labor for the improvements are to be paid, unlike the vendor in the *People's Bldg. & Loan* case.

The $1,700 returned by Arkansas Abstract to Modern American Mortgage Corporation to release the lot from the Olsens' mortgage amounts to simply applying the loan proceeds to the purchase price of the lot, and

we hold that the trial court should have treated it in the same manner as it did the $1,050 payment to the Olsens—*i. e.,* neither should have been allowed priority over the materialmen's lien.

Cross-appellant does not dispute the $183 paid for hazard insurance and the $45 paid for FHA appraisal as advances entitled to priority over its liens. It does contest the allowance for attorney's fees and court costs. We think counsel is in error to this extent, for counsel fees by statute are assessed as court costs, and we certainly think that court costs are part of the security bargained for in a construction money mortgage.

Therefore we reverse and remand this case to the trial court with directions to allow appellant as mortgagee priority for the amounts actually expended in construction of the building and the court costs, but to disallow the $1,050 and $1,700 expended by the mortgagee's agent for the purchase of the land. So much of the decree as required the mortgagee to pay funds into the court under the equitable garnishment is also reversed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I dissent from this decision for the reasons stated in *The First National Bank of Conway* v. *Conway Sheet Metal Company, Inc.,* No. 5-4504, 244 Ark. 963, 428 S. W. 2d 293, insofar as the $1,050.00 for the purchase price of the lot is concerned. The statement that the mortgagee is bound, when disbursing the money, to expend it for construction purposes only, clearly overrules *Sebastian Building & Loan Ass'n* v. *Minten,* 181 Ark. 700, 27 S. W. 2d 1011, without reservation. The suggestion that following the procedure used in *Ashdown Hardware Co.* v. *Hughes,* 223 Ark. 541, 267 S. W. 2d 294, makes a difference, puts a construction on that case which the court did not refer to or suggest when the case was decided.

The distinction between a lump sum loan and installment or future advance loan for these purposes is a strained one, to say the least. The fact that sums are to be advanced seems to me to make little difference insofar as the application of the ''purpose'' doctrine is concerned. The net result is that we have at least partially abandoned the ''purpose'' doctrine.

It seems inconsistent to me to say that the mechanics and materialmen are not third party beneficiaries of the construction money mortgage, after having said that they are entitled to look at the records to ascertain that the builder will have periodic advances, contracted to be used solely for construction purposes. I do not believe that it is the purpose of the recording statutes to do more than give notice of the lien claimed by the mortgagee and the means of ascertaining the amount secured. Reliance on them for the purpose suggested by the majority is inappropriate.

As to the $1,700.00 paid to retire the existing mortgage, I cannot see how the position of the appellees was damaged. If the disbursement had not been made, Modern American would still have a prior lien on the lot for $1,700.00. This lien was of record and I find no representation by Modern American that the debt secured thereby was paid prior to the time of the construction money loan, as was the case in *Planters Lumber Company* v. *Wilson,* 241 Ark. 1005, 1100, 413 S. W. 2d 55.

I agree that there was no basis for requiring appellant to pay the undisbursed portion of the loan into the registry of the court or to require appellant to disburse it.

I would reverse on appeal and affirm on cross-appeal.