## THE SPICKES BROTHERS PAINTING CONTRACTORS, INC., et al. *v.* WORTHEN BANK & TRUST COMPANY, N.A.

88-203                                771 S.W.2d 258

Supreme Court of Arkansas
Opinion delivered May 30, 1989

*Bryant, Owen & Rowell,* by: *William Owen: Hilburn, Calhoon, Harper & Pruniski, Ltd.,* by: *James D. Lawson,* for appellant.

*Wright, Lindsey & Jennings; Barrett, Wheatley, Smith & Deacon,* for appellee.

KENT J. RUBENS, Special Chief Justice. On April 26, 1984, Worthen Bank and Trust Company, N.A., (Worthen) lent to Lifesavers Center, Inc., (Lifesavers) the sum of $1,600,000 for the purpose of construction of improvements on lands upon which Lifesavers gave Worthen a mortgage. The mortgage contained the following language:

> [Worthen] is firmly bound and obligated to make the $1,600,000.00 loan secured hereby which shall be applied by [Lifesavers] to payment of labor and material costs to be incurred in the construction of improvements on the above described land. Notice is hereby given that the lien of this mortgage shall have priority over any statutory liens on account of labor done and materials furnished in connection with the construction of such improvements.

It is undisputed that Worthen did not lend the full amount for the purpose of construction. The sum of $200,000 was applied at closing for the purpose of paying off the property upon which the improvements were to be constructed. An additional amount, $54,185.98, was disbursed at closing for "closing costs." Worthen had a representative at the closing and does not dispute that its representative had knowledge that all funds were not to be used for construction. It is undisputed that Worthen recorded its mortgage prior to the beginning of any construction.

After construction progressed there was a default by Lifesavers, and Worthen, acting pursuant to the terms of its note and mortgage, filed suit for foreclosure. Various materialmen, who had properly filed their lien claims, were made parties to the

action. A number of those materialmen denied that Worthen's mortgage was superior to their lien and asserted that Worthen's knowledge that the full amount of the loan proceeds was not to be applied for the purpose of construction of improvements rendered Worthen's lien inferior to that of those materialmen.

At trial Worthen conceded that it was not entitled to a lien for the full amount of the loan and stipulated that its lien should be reduced to $1,345,814.02. The Spickes Brothers Painting Contractors and other materialmen (hereafter collectively referred to as Spickes Brothers) claimed that their materialmen's liens were entitled to superiority over the lien of Worthen and that they, not Worthen, were entitled to the first $254,000 of proceeds from any sale of the mortgaged property.

The lower court concluded that Worthen was entitled to a first lien for $1,345,814.02 and that the liens of Spickes Brothers were inferior to the lien of Worthen to the extent of the first $1,345,814.02. We affirm.

Spickes Brothers claims that the lower court misinterpreted prior decisions of this court or, in the alternative, asks that we reexamine our precedents in light of the actions of Worthen in the instant case. Simply put, Spickes Brothers contends that Worthen's knowledge that part of the proceeds from the loan was not to be used for the purpose of constructing improvements bars its lien from having priority over the materialmen's lien claims. We have no hesitancy holding that the chancellor did not misinterpret our prior decisions, and we decline the invitation to overrule precedent for the reasons hereinafter given.

Ark. Code Ann. § 18-44-110 (1987) provides as follows:

> The lien for the things or work specified in this subchapter [Mechanic's and Materialmen's liens] shall attach to the buildings, erections, or other improvements for which they were furnished or work was done in preference to any prior lien, encumbrance, or mortgage existing upon the land before the buildings . . . were erected or put thereon. However, in all cases where the prior lien, encumbrance, or mortgage was given or executed *for the purpose* of raising money or funds with which to make the erections, improvements, or buildings, then that lien shall be prior to the lien

given by this subchapter. (Italics supplied.)

We have previously construed this statute. In *Sebastian Building & Loan Assoc.* v. *Minten*, 181 Ark. 700, 27 S.W.2d 1011 (1930), the materialmen asserted priority of their liens over the lien of a construction money mortgage. The materialmen claimed that the lender should be required to prove that the moneys had been actually expended for improvements and relied upon *Chauncey* v. *Dyke Brothers*, 119 F. 1 (8th Cir. 1902), which had construed our statute to that effect. This we declined to do.

> There is nothing in the language of the statute to indicate that the Legislature intended that the mortgagee must see to the use, or the application of the money raised by such mortgages. The legislative declaration was that the purpose of the loan should determine its superiority . . . If the Legislature had intended the use to which the money borrowed was the test of the superiority of the liens, it doubtless would have so declared instead of making the purpose for which the money was borrowed the test.

We note that the legislature has not amended that portion of the statute. Thus our test has been the purpose for which the moneys were lent rather than the use.

■ The requirements for establishing the construction money mortgagee's priority over the liens of materialmen are: (1) the mortgage must be executed and recorded before the commencement of the building; (2) the mortgagee must be unequivocally bound to advance money for construction; and (3) the recorded mortgage must show that the mortgagee is unequivocally bound. *Dempsey* v. *McGowan*, 291 Ark. 147, 722 S.W.2d 848 (1987). Although we have encountered cases where a portion of the proceeds from the construction money loan was applied other than for the payment for improvements either with or without the knowledge of the mortgagee, we have never ruled that the materialmen had liens superior to the amount of the construction money mortgage lien as finally determined when the above conditions have been met. *See, e.g., Dempsey* v. *McGowan, supra; House* v. *Scott*, 244 Ark. 1075, 429 S.W.2d 108 (1968); *First National Bank* v. *Conway Sheet Metal Co.*, 244 Ark. 963, 428 S.W.2d 293 (1968); *Planters Lumber Co., Inc.* v. *Wilson Co., Inc.*, 241 Ark. 1005, 413 S.W.2d 55 (1967); *Ashdown Hardware*

v. *Hughes*, 223 Ark. 541, 267 S.W.2d 294 (1954).

■■ In our decisions, we have continued to recognize the purpose for which the money is lent to be the controlling test once the other requirements are met. When a situation arises in which the mortgagee has permitted or known that funds were not to be used for the improvements, we have held that the lender cannot claim priority *in these amounts. Planters Lumber Co., Inc.* v. *Wilson Co., Inc., supra. See also, First National Bank* v. *Conway Sheet Metal Co., supra.* We are not unmindful of our statement in *House* v. *Scott, supra,* where we did not reach the issue but gave notice that in the future "we will reexamine the *Minten* case to the extent that it may hold that a lender can knowledgeably disburse construction money for purposes other than construction and still claim priority over the mechanic's lien." We have had the opportunity to reexamine our position, and we have declined to change it. In *Dempsey* v. *McGowan, supra,* we said:

> Some of the funds released by the mortgagee were used by the mortgagor for purposes other than construction; however, when determining priority of liens we consider the *purpose* for which the funds were supplied rather than the *use* which was made of the money.

Our decisions do not protect the mortgagee's lien as to amounts not spent for improvements when the mortgagee knew of the diversion. *See, e.g., First National Bank* v. *Conway Sheet Metal Co., supra.* Spickes Brothers has received priority over the amounts that Worthen permitted to be spent on matters not related to the improvements. That ruling provides little more than a Pyrrhic victory for Spickes Brothers because the asset is not worth the amount of the reduced lien awarded Worthen. But Spickes Brothers had the right to determine from the disbursing party how much money had been spent for construction. Review of Mr. Spickes' testimony indicates the following:

> Q. Now when you talked to Mr. Moore [Worthen's representative] isn't it true that what you were doing is what you normally do on any job with an owner to make sure that the owner has a financing arrangement?
>
> A. That's basically correct.
>
> Q. You're not telling this Court, are you, that Mr. Moore

ever told you in that conversation that Worthen Bank would pay you?

A. No.

Q. [W]hen you stopped getting payments in April, 1985, you continued to send bills on a monthly basis to Lifesavers?

A. That's correct.

Q. You never sent a bill to Worthen Bank?

A. I had no contractual obligation, agreement, with Worthen Bank.

Both parties have favored us with excellent briefs. The argument of Spickes Brothers is appealing, but it properly addresses itself to the legislature and not this court. The materialmen's lien and the construction money mortgage lien are in derogation of common law. Both are creatures of the legislature. The legislature is presumed to know the decisions of the supreme court, and it will not be presumed in construing a statute that the legislature intended to require the court to pass again upon a subject where its intent is not expressed in unmistakable language. *Rhodes v. Cannon*, 112 Ark. 6, 164 S.W. 752 (1914).

It should be pointed out that our decisions do not permit the construction lender to obtain a lien on any amount not spent for the construction of improvements when the lender *diverted* the funds for purposes other than construction. *First National Bank v. Conway Sheet Metal Co., supra*. Worthen has admitted that it is not entitled to a lien for the full amount of the loan, and to the extent Worthen has been penalized for diverting those funds for another purpose.

Because we find that the chancellor correctly interpreted our prior holdings and we decline the invitation of Spickes Brothers to overrule prior decisions of this court, the decree is affirmed.

Affirmed.

HOLT, C.J., and DUDLEY, J., not participating.

JILL R. JACOWAY, Special Justice, concurs.

JILL R. JACOWAY, Special Justice, concurring. I concur with

the majority's holding that the trial court's decision should be affirmed. The statute under which appellants proceeded in this case does not afford them the remedy which they seek. However, my sympathies go to the materialmen. The "penalty" imposed on the lender for making misrepresentations does not, in this instance, seem harsh enough.

Ark. Code Ann. § 18-44-110 (1987) does not afford the materialmen the result they desire. Since the materialmen's lien law was first put on the books before the turn of the century, it has been recodified three times. Seemingly, each recodification implies legislative investigation and approval. The statute has survived through the years virtually unchanged in spite of how this court has interpreted it.

The statute and the cases interpreting it allow a lender to openly and fraudulently misrepresent that the purpose of a loan is to be for construction. Even though the lender knows that a portion of the loan is to be used for other purposes, the lender will still enjoy the position of priority over any subsequent lienholders and materialmen to the extent that the funds are used for the stated purpose. Such are the fixed facts of this case.

Worthen knew at the time of the loan closing that a portion of the funds was to be used for purposes other than construction, but did not disclose this information on its mortgage. As punishment for this intentional misstatement, the portion of the funds which was actually used for other purposes loses its priority while that portion used for the stated purpose retains priority above the materialmen. Given the drafting and interpretation of the statute, this result is appropriate. It seems to me, however, to be inequitable to allow one to profit from his lie.

I can understand the materialmen's reliance on the purpose stated in the bank's mortgage; i.e., that it was given for construction purposes only. There was no other mortgage of record; there was no indication of any "purchase money" mortgage in the county recorder's records. Hence, materialmen might well conclude that the owner/developer had invested equity in the land. From a review of the revenue stamps on the recorded deed, the materialmen could have determined the amount of that presumed equity was $200,000.

In my view, construction money mortgagees should be allowed priority to the extent that the funds are actually *used* for the stated purpose; i.e., construction. However, any construction mortgagee who intentionally misleads others by falsely stating on publicly filed documents that funds will be used for construction, knowing full well that the funds are to be used for other purposes, should not be allowed the benefit and protection of priority. False statements should not be rewarded.

Perhaps a different result would have been available to these materialmen under some other theory, but they are not entitled to recovery under their theory based on the statute as drafted. Foreclosure, being an equitable proceeding, permits the use of such defenses as unclean hands and equitable estoppel. Had the materialmen pled those defenses, the result might have been different.

Worthen was not acting in good faith. Whether this conduct rose to the level of unclean hands is open to question. With the facts before us, Worthen's actions, although misleading, were not egregious enough for this court to reverse the trial court on this issue *sua sponte.*